■ KENNETH T. LALLY, Appellant, v CATSKILL AIRWAYS, INC., et al., Defendants, and ROBERT E. PEACH, JR., Respondent. [603 NYS2d 619] —Yesawich Jr., J. Appeal from an amended order of the Supreme Court (Ryan, Jr., J.), entered April 10, 1992 in Schenectady County, which granted defendant Robert E. Peach, Jr.'s motion for summary judgment dismissing the complaint against him.

Plaintiff commenced this action in April 1990 to recover on a promissory note given to him by defendant Catskill Airways, Inc. in exchange for a loan of approximately $200,000. Shortly after the initial installment on the note came due, in January 1989 defendant Steven C. Low, the majority shareholder of Catskill, entered into an agreement with defendant Robert E.

Peach, Jr. whereby the latter would take over the management of Catskill and attempt to improve the company's financial position. In exchange, Low would sign over his shares in Catskill to Peach at some future date. Although Peach asserts that this aspect of the agreement was intended as merely an option to purchase Low's shares, exercisable at Peach's discretion, it appears that at some point Low became insistent about the transfer, and in November 1989 Peach and Low signed a document by which Low purported to convey a stock certificate representing his 32,000 shares of common stock in Catskill to Peach.

From January 1989 until September 1989, Peach made all of the business and financial decisions for Catskill. During this time, it became evident to him that Catskill's financial condition was more precarious than he had anticipated. In July 1989, Peach began operating Catskill under the name "Mohawk", a trademark owned by Horizon Air, Inc., another airline corporation of which Peach was a principal owner. Horizon also made several loans to Catskill during the spring and summer. On September 30, 1989, without consulting Low or any of the other shareholders, officers or directors of Catskill, Peach transferred all of that company's assets to Horizon, allegedly in exchange for cancellation of Catskill's debt to Horizon. Catskill's employees were placed on Horizon's payroll and operations continued without interruption.

It is plaintiff's contention that Peach should be held personally liable for the debts of Catskill because he acted fraudulently, without observing proper corporate formalities and to his own benefit, in handing over the company's assets to Horizon. He also claims that Peach tortiously interfered with the contract between plaintiff and Catskill by causing Catskill's assets to be transferred to Horizon, thus preventing Catskill from meeting its contractual obligation to plaintiff. Peach's motion for summary judgment dismissing these claims was granted and plaintiff appeals. Assuming, without deciding, that the arguably conclusory assertions contained in Peach's affidavit are adequate to satisfy his initial burden of establishing a right to judgment in his favor, we nevertheless find the existence of triable issues of fact which mandate reversal.

The first claim plaintiff puts forward against Peach seeks to "pierce the corporate veil" of Catskill and hold Peach directly liable for the company's debt. To prevail on this claim, plaintiff must demonstrate that Peach exercised complete dominion and control over Catskill, that this domination was used in

the commission of wrongful acts, such as fraud, and that injury to plaintiff resulted (see, Bowles v Errico, 163 AD2d 771, 773). Although Peach maintains that he had no ownership interest in Catskill, the evidence, viewed in a light most favorable to plaintiff, suggests that he exercised considerable authority over Catskill after entering into the agreement with Low, to the point of completely disregarding the corporate form and acting as though Catskill's assets were his alone to manage and distribute. This raises a question as to whether he was, in reality, the equitable owner of Catskill (see, Matter of Morris v New York State Dept. of Taxation & Fin., 183 AD2d 5, 8, revd on other grounds 82 NY2d 135). The fact that all of Catskill's assets were delivered over to Horizon, a corporation in which Peach held a substantial interest, allows for the inference that Peach may have been acting in his own interest, "managing" Catskill's financial resources for his own benefit to the detriment of its other creditors; such conduct, if proven, would provide justification for disregarding the corporate form and imposing liability on Peach directly (see, Port Chester Elec. Constr. Corp. v Atlas, 40 NY2d 652, 657; 888 7th Ave. Assocs. Ltd. Partnership v Arlen Corp., 172 AD2d 445). Furthermore, inasmuch as the nature and amount of consideration received from Horizon is unclear, the transfer of assets from an apparently insolvent Catskill creates a triable fact issue with respect to the possibility that Peach's actions constituted a fraud upon Catskill's other creditors, including plaintiff (cf., Southern Indus. v Jeremias, 66 AD2d 178, 181, 184). Accordingly, summary judgment on this cause of action is unwarranted.

As for the charge that Peach tortiously interfered with Catskill's performance under the note, we again find plaintiff's submissions sufficient to give rise to questions of fact with regard to each disputed element of the claim. The existence of a valid contract between plaintiff and Catskill is undisputed, and although Peach denies knowledge of that contract at the time he entered into the agreement with Low, Low's deposition testimony indicates that Peach was given copies of the pertinent documents prior to the agreement. In any event, it is undeniable that Peach was aware of the obligation by the time he transferred Catskill's assets to Horizon. Peach admits that one of the reasons for not formally merging the corporations was to avoid the assumption of certain of Catskill's liabilities by Horizon; this supports an inference that the transfer was made for the purpose of maliciously interfering with contractual duties such as the one running from Catskill to plaintiff.

Mikoll, J. P., Mercure, Crew III and Mahoney, JJ., concur. Ordered that the order is reversed, on the law, without costs, and motion denied.