**D. KLEIN & SON, INC., Plaintiff–Counter–defendant–Appellee,**

v.

**GOOD DECISION, INC., Good Decision, Ltd. Defendants–Counterclaimants–Appellants.**

No. 04–1994.

United States Court of Appeals, Second Circuit.

Feb. 15, 2005.

Kenneth MacDonald, Henry K. Hui & Associates, Richmond Hill, Ontario, Canada, for Appellants.

Barry W. Frost, Teich, Groh, Frost and Zindler, Trenton, New Jersey, for Appellee.

PRESENT: OAKES, RAGGI, and WESLEY, Circuit Judges.

## SUMMARY ORDER

Defendants-appellants Good Decision, Inc., ("GDI") and Good Decision, Ltd. ("GDL") appeal a final judgment entered against them following a bench trial on, inter alia, plaintiff-appellee D. Klein & Son, Inc.'s, ("D.Klein") breach of contract claims. Defendants do not here contest the district court's conclusion that the contracts at issue were breached. Instead, they appeal only (1) the district court's exercise of personal jurisdiction over GDL, (2) the sufficiency of the evidence to support liability by GDL as well as GDI, and (3) the sufficiency of the evidence to support the damages award. We assume the parties' familiarity with the facts and the record of proceedings, which we reference only as necessary to explain our decision to affirm.

### 1. *Personal Jurisdiction over GDL*

■ GDL submits that the district court erred in exercising personal jurisdiction over it pursuant to N.Y. C.P.L.R. §§ 301 and 302 because the evidence was insufficient to support a finding, based on the four-factor test set forth in *Volkswagenwerk AG v. Beech Aircraft Corp.*, 751 F.2d 117, 120–22 (2d Cir.1984), that GDI and GDL are "mere departments" of one another, such that the court's undisputed personal jurisdiction over the former extended to the latter. We disagree.

In reviewing a district court's decision regarding personal jurisdiction, we examine findings of fact for clear error and legal conclusions de novo. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir.2004). Because the exercise of personal jurisdiction over an alleged alter ego, *see Volkwagenwerk AG v. Beech Aircraft Corp.*, 751 F.2d at 120–22, requires application of a "less onerous standard" than that necessary for equity to pierce the corporate veil for liability purposes under New York law, *see Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981) (noting that for jurisdictional purposes, unlike for liability purposes, use of control to commit a fraud or wrong is not required), we conclude, for reasons stated *infra* in rejecting defendants' challenge to the district court's veil-piercing analysis, that sufficient evidence was adduced of GDI's and GDL's common ownership, financial dependency, and common control of their marketing and operational

policies to support the district court's exercise of personal jurisdiction over GDL. *See Volkswagenwerk AG v. Beech Aircraft Corp.*, 751 F.2d at 120–22.

### 2. *Contract Liability*

■ To pierce a veil to impose common liability on GDI and GDL for the charged breaches of contract, D. Klein was obliged to prove (1) that "the owner exercised complete domination over the corporation with respect to the transaction at issue" and (2) that "such domination was used to commit a fraud or wrong that injured" D. Klein, "the party seeking to pierce the veil." *Mag Portfolio Consult, Gmbh v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir.2001) (quoting *American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir.1997)). Defendants challenge each part of this test, arguing both that the district court's decision to pierce the corporate veil was not supported by sufficient evidence of control and that, in any event, the district court improperly concluded that control was used to commit a wrong that injured D. Klein. We find neither argument convincing.

Preliminarily, we note that equity usually pierces a corporate veil to allow liability to be imposed on the actual or equitable owner of a dominated corporation. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir.1991) (discussing piercing to reach individual or corporate owners); *Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 142, 603 N.Y.S.2d 807, 810, 623 N.E.2d 1157 (1988) (noting veil piercing "is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners"); *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1051–52 (2d Cir.1997) (citing *Guilder v. Corinth Constr. Corp*, 235 A.D.2d 619, 620, 651 N.Y.S.2d 706, 707 (3d Dep't 1997), and *Lally v. Catskill Airways, Inc.*, 198 A.D.2d 643, 645, 603 N.Y.S.2d 619, 621 (3d Dep't 1993), in recognizing permissibility of veil piercing where a non-shareholder exercises sufficient control over a corporation as to be deemed its "equitable owner"). In this case, however, veil piercing has not resulted in the imposition of owner liability but in a liability judgment against corporations, GDI and GDL, which common owners have so dominated that the entities have operated, at least with respect to D. Klein, as a single enterprise. New York law has long recognized that it is possible for "two corporations [to] have become so inextricably confused that it is impossible or impracticable to identify the corporation that participated in the transaction attacked." *Lowendahl v. Baltimore & Ohio R. Co.*, 247 A.D. 144, 156–57, 287 N.Y.S. 62, 74–76 (1st Dep't 1936) (noting principle in parent-subsidiary context), *aff'd* 272 N.Y. 360, 6 N.E.2d 56 (1936). As this court ruled in *William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, veil piercing may be used "to reach the assets of either the individual [owners] *or* the other [owner]-controlled corporate entities." 933 F.2d at 139–40 (holding showing of control by owners of eight separate corporations operated as single entity by common owners sufficient to justify piercing corporate veil of one corporation to reach assets of either owners or other corporate entities) (emphasis added); *see also Gartner v. Snyder*, 607 F.2d 582, 588 (2d Cir. 1979) (noting that while evidence did not support veil piercing to reach defendant individual owner himself, veil piercing may be appropriate to hold liable two separate businesses not party to action but operated by individual-owner defendant as single "larger corporate combine").

Applying these principles to this case, we review de novo the district court's decision to pierce the corporate veils of GDI

and GDL to expose these entities as alter egos of one another; nevertheless, we defer to the court's fact finding unless clearly erroneous. *See Rose v. AmSouth Bank of Fla.*, 391 F.3d 63, 65 (2d Cir.2004). The district court found that the common owners of GDI and GDL, Dominic Chu and his wife, exercised complete domination over these businesses and, more to the point, used these entities interchangeably with no regard for their separate corporate identifies. The record evidence amply supports this finding. It demonstrates not only overlap, indeed identity, in the ownership of GDI and GDL, it establishes the two entities' common use of marketing materials, e-mail addresses, and telephone numbers. Moreover, it proves that GDI and GDL did not operate as independent profit centers nor did they deal at arms-length with respect to the luggage-related goods manufactured by GDL and distributed by GDI. Instead, payments for the vast majority of plaintiff's orders were sent to GDL without regard to whether the invoice originated with that company or GDI, and nothing in the record indicates that these entities subsequently reconciled their accounts with respect to these payments to maintain their separate corporate identities.

These findings might well have supported piercing the corporate veil of both companies to impose liability directly on their common owners, *see generally Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d at 139 (listing factors relevant to determining whether corporation is a dominated corporation); *accord American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d at 134, but such findings also support veil piercing to impose liability on both entities so controlled by the Chus as to operate as a single "corporate combine," *see Gartner v. Snyder*, 607 F.2d at 588; *accord Wm. Passa-*

*lacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d at 140.

As for the second veil-piercing factor, this court has ruled that it may be satisfied "either upon a showing of fraud or upon complete control . . . that leads to a wrong against third parties." *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d at 138; *see also Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 853–54 (2d Cir.1985) (holding that even absent fraud, corporate veil may be pierced if parent used its control of subsidiary " 'to perpetrate the violation of a . . . positive legal duty or a dishonest or unjust act in contravention of plaintiff's legal rights' " (quoting *Lowendahl v. Baltimore & Ohio R. Co.*, 247 A.D. at 157, 287 N.Y.S. 62)). In this case, the district court found that the common owners of GDI and GDL used their domination of both companies to obfuscate their separate identities in dealing with D. Klein both at the time the contractual relationship commenced and throughout their course of dealings. Indeed, Chu represented that "GDI and GDL were the same business." This misrepresentation as to the identity of the contracting party is the dishonest act or wrong satisfying the second requirement for veil piercing.

The reason veil piercing in the contract context is infrequent is because the party seeking relief "is presumed to have voluntarily and knowingly entered into an agreement with a corporate entity, and is expected to suffer the consequences of limited liability associated with the business form." 1 William Mead Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 41.85 (perm. ed. rev.vol. 1999). But such a presumption is hardly warranted where multiple corporate entities misrepresent themselves to have a single identity. In such circumstances, a contract partner can be misled into thinking it is dealing with—and will have re-

course against—a single, large entity. Accordingly, in such circumstances, courts may appropriately pierce corporate veils to ensure that a plaintiff can seek relief against the whole entity with whom it reasonably thought it had contracted. That is certainly appropriate in this case where the court found that GDI and GDL, effectively operated by their common owners as a single company, both contributed to the charged breaches.

### 3. *The Damages Calculation*

Defendants submit that the amount of consequential damages awarded pursuant to N.Y. U.C.C. § 715(2)(a) for (1) lost profits and (2) other costs, including duty, freight, and handling costs of returned or unusable goods is not supported by the evidence. Defendants also submit that the court's decision to dismiss defendants' mitigation claim is not supported by the evidence. We disagree.

The amount of recoverable damages, which GDI and GDL here challenge, is a question of fact that we review for clear error; only the standard used by the district court to measure damages, which defendants do not here challenge, is a question of law that we review de novo. *See Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193, 196 (2d Cir.2003); *Wolff & Munier, Inc. v. Whiting–Turner Contracting Co.*, 946 F.2d 1003, 1009–10 (2d Cir. 1991); *United States ex rel Maltese & Sons, Inc. v. Juno Constr. Corp.*, 759 F.2d 253, 255 (2d Cir.1985). The trial record includes copies of the sales confirmations and invoices evidencing the contracts between the parties, a document summarizing the profits lost on each contract breached, a document summarizing the other costs plaintiff incurred as a result of the breaches, and the testimony of the plaintiff's principal officer explaining the summary documents and the basis for the lost profits and other costs claimed therein. With this evidence before the district court, we find no clear error in its factual determination that plaintiff sustained lost profits in the amount of $2,006,500 and incurred other costs in the amount of $600,217. Moreover, given the evidence establishing plaintiff as a reseller of luggage-related goods that ordered products to be manufactured under its licenses for resale to specific customers and the evidence of late delivery or non-delivery of certain goods and the poor quality of other goods actually delivered, we are not "left with the definite and firm conviction that a mistake has been committed," *see Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d at 193, with respect to the district court's finding that plaintiff's losses "could not reasonably be prevented by cover," and we, therefore, reject defendants' argument that the district court clearly erred in so finding. N.Y.U.C.C. § 2–715(2)(a); *see generally Texpor Traders, Inc. v. Trust Co.*, 720 F.Supp. 1100, 1114 (S.D.N.Y.1989) (finding possibility of mitigation foreclosed by confirmed orders for resale of goods purchased).

The judgment of the district court in favor of plaintiff-appellee D. Klein & Son, Inc., entered on March 22, 2004, and amended on March 31, 2004, is hereby AFFIRMED.