# Illinois Official Reports

## Appellate Court

***Buckley v. Abuzir*, 2014 IL App (1st) 130469**

| | |
|---|---|
| Appellate Court Caption | JOHN BUCKLEY and MAMA GRAMM'S BAKERY, INC., an Illinois Corporation, Plaintiffs-Appellants, v. HAITHAM ABUZIR, a/k/a Mike Abuzir, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-0469 |
| Filed | April 10, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action to pierce the corporate veil of a corporation and collect directly from defendant a judgment entered against the corporation for violating the Illinois Trade Secrets Act by wrongfully acquiring plaintiffs' recipes and customer lists, the trial court erred in dismissing plaintiffs' complaint, notwithstanding defendant's contentions that he was not a shareholder, officer, director, or employee of the corporation and there were no allegations that he engaged in any wrongdoing, since defendant's status as a nonshareholder did not preclude veil-piercing and plaintiffs' allegations were sufficient to survive dismissal; therefore, the judgment was reversed and the cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-27736; the Hon. LeRoy K. Martin, Jr., Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

John P. Brattoli and Joseph L. Planera, both of Joseph L. Planera &
Associates, of Chicago Heights, for appellants.

Arthur E. Rosenson, of Cohen Rosenson & Zuckerman LLC, of
Chicago, for appellee.

Panel

JUSTICE EPSTEIN delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice Lavin concurred in the judgment
and opinion.

## OPINION

¶ 1    Plaintiffs Mama Gramm's Bakery, Inc. (Mama Gramm's), and John Buckley seek to pierce
the corporate veil of Silver Fox Pastries, Inc. (Silver Fox), and collect a judgment directly from
defendant Haitham Abuzir. The trial court granted defendant's motion to dismiss plaintiffs'
amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS
5/2-615 (West 2010)). Plaintiffs argue on appeal that their complaint should not have been
dismissed, because they alleged sufficient facts to show that defendant created Silver Fox as a
dummy corporation through which he violated the Illinois Trade Secrets Act (765 ILCS 1065/1
*et seq.* (West 2006)). We reverse the trial court's judgment and remand for further
proceedings.

¶ 2                                    BACKGROUND

¶ 3    In the underlying action, the circuit court entered a default judgment in plaintiffs' favor in
the amount of $421,582.50 for Silver Fox's violation of the Illinois Trade Secrets Act (765
ILCS 1065/1 *et seq.* (West 2010)), including Silver Fox's wrongful acquisition of Mama
Gramm's recipes and customer lists. Unable to collect from Silver Fox, plaintiffs turned their
attention to defendant. On June 29, 2010, plaintiffs filed a complaint in a separate cause of
action seeking to pierce Silver Fox's corporate veil. Plaintiffs alleged that, although
defendant's sister, Suna Abuzir, "held herself out as being Silver Fox's 'owner,' " and his
brother-in-law, Ali Alsahli, was Silver's Fox's president and registered corporate agent,
defendant funded Silver Fox, "made all business decisions," and "exercised ownership control
over the corporation SILVER FOX to such a degree that separate personalities of the
corporation and [defendant] did not exist."

¶ 4    Defendant filed a motion to dismiss the complaint on August 17, 2010, arguing that the
corporate veil could not be pierced, because he was never a director, officer, shareholder, or
employee of Silver Fox. On December 22, 2010, the trial court granted defendant's motion. On
January 13, 2011, plaintiffs filed a motion to reconsider and cited *Fontana v. TLD Builders,
Inc.*, 362 Ill. App. 3d 491 (2005), for the proposition that the defendant need not be a

shareholder for the court to pierce the corporate veil and hold the defendant personally liable. The circuit court granted plaintiffs' motion on April 6, 2011.

¶ 5    Plaintiffs filed an amended complaint on April 13, 2011, expanding some of the allegations they set forth in the original complaint. Defendant filed a section 2-619 motion to dismiss on May 2, 2011, arguing that he merely supported Silver Fox, a business owned and managed by his sister and brother-in-law, and that providing funds to start the business, negotiating Silver Fox's lease, and arranging accounts and sales agreements provided an insufficient basis for piercing the corporate veil. Defendant further argued that plaintiffs failed to allege that he was involved in violating the Illinois Trade Secrets Act. On July 1, 2011, the circuit court granted defendant's motion to dismiss with prejudice.

¶ 6    A different panel of this court held on appeal that the motion to dismiss was improperly brought under section 2-619. *Buckley v. Abuzir*, 2012 IL App (1st) 112246-U. Accordingly, the circuit court's judgment was reversed and the cause remanded for further proceedings. *Id.* On remand, on September 19, 2012, defendant again filed a motion to dismiss, this time pursuant to section 2-615. On January 23, 2013, the circuit court again granted defendant's motion with prejudice. The court also denied plaintiffs' request for leave to amend their claim. Plaintiffs timely appealed.

¶ 7                                    ANALYSIS

¶ 8    Plaintiffs argue that the trial court should have denied defendant's motion to dismiss, because their amended complaint alleged sufficient facts to pierce the corporate veil, where they claimed defendant created Silver Fox as a sham corporation, through which he obtained plaintiffs' recipes and customer lists. Defendant counters that Illinois courts only pierce the corporate veil to impose liability on a corporation's shareholders, officers, directors, or employees, and he was none of these. Defendant further argues that plaintiffs failed to allege that he engaged in any wrongdoing. Before we discuss the merits of the section 2-615 dismissal, we address another concern raised by the parties: whether it is proper to bring a separate action to pierce the corporate veil.

¶ 9    Defendant complains that he was not a party to the underlying trade secrets action and, therefore, the instant action deprived him of the ability to defend himself against those allegations. Piercing the corporate veil is not a cause of action but, rather, a means of imposing liability in an underlying cause of action. *Peetoom v. Swanson*, 334 Ill. App. 3d 523, 527 (2002). Parties may, however, bring a separate action to pierce the corporate veil for a judgment already obtained against a corporation. *Lange v. Misch*, 232 Ill. App. 3d 1077, 1081 (1992); see also *Pyshos v. Heart-Land Development Co.*, 258 Ill. App. 3d 618, 624 (1994) ("[A] judgment creditor may choose to file a new action to pierce the corporate veil to hold individual shareholders and directors liable for the judgment of the corporation."); *Westmeyer v. Flynn*, 382 Ill. App. 3d 952, 956 (2008) (same); *Miner v. Fashion Enterprises, Inc.*, 342 Ill. App. 3d 405, 414-15 (2003) (same). The instant suit was therefore the proper method for attempting to pierce the corporate veil. We also note that, if it is proved in the corporate veil suit that defendant was the alter ego of the corporation, then the decision not to defend the underlying suit would have been defendant's, *ipso facto*.

¶ 10   We turn now to the merits. Under section 2-615, courts must ask whether the facts alleged in the complaint, when viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Doe-3 v. McLean County Unit District No.*

*5 Board of Directors*, 2012 IL 112479, ¶ 16. Courts must accept all well-pleaded facts and all reasonable inferences drawn from those facts as true. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). Courts should grant a section 2-615 motion to dismiss only if no set of facts could be proved that would entitle the plaintiff to recovery. *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 14. Review of a section 2-615 dismissal is *de novo*. *Doe-3*, 2012 IL 112479, ¶ 15.

¶ 11       Piercing the veil is the most litigated issue in corporate law. Robert B. Thompson, *Piercing the Corporate Veil: An Empirical Study*, 76 Cornell L. Rev. 1036, 1036 (1991). It is also poorly understood. *Id.*; *Berkey v. Third Avenue Ry. Co.*, 155 N.E. 58, 94 (N.Y. 1926) (Justice Benjamin Cardozo famously wrote that veil-piercing has been "enveloped in the mists of metaphor."). Illinois courts, like courts across the nation, frequently claim to be reluctant to pierce the corporate veil. See, *e.g.*, *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1033 (2007); *Roiser v. Cascade Mountain, Inc.*, 367 Ill. App. 3d 559, 566 (2006); *Cosgrove Distributors, Inc. v. Haff*, 343 Ill. App. 3d 426, 429 (2003); *Ted Harrison Oil Co. v. Dokka*, 247 Ill. App. 3d 791, 795 (1993); see also Stephen B. Presser, Piercing the Corporate Veil § 2.14 (2013) ("Illinois follows the familiar two-part test for piercing the veil, and the courts of the state appear to apply the test in a relatively conservative manner, so that it is comparatively difficult to pierce the corporate veil in the state."). Yet studies show that Illinois courts pierce the corporate veil in approximately 42% to 52% of cases, near the average for American courts. Thompson, *supra* ¶ 11, at 1048 (Illinois courts pierce approximately 42% of the time); Peter B. Oh, *Veil-Piercing*, 89 Tex. L. Rev. 81, 107, 115 (2010) (American courts pierce the corporate veil 48.51% of the time; Illinois does so 52.50% of the time). Veil-piercing occurs almost exclusively in closely held corporations, especially one-person corporations, such as the one here. *Id.* at 110; Thompson, *supra* ¶ 11, at 1055.

¶ 12       Despite the haze surrounding veil-piercing, Illinois courts have developed fairly uniform rules on the subject. A corporation is an entity separate and distinct from its shareholders, directors, and officers. *In re Rehabilitation of Centaur Insurance Co.*, 158 Ill. 2d 166, 172 (1994). Indeed, the primary purpose of corporations is to insulate stockholders from unlimited liability. *Peetoom*, 334 Ill. App. 3d at 526. Courts may pierce the corporate veil, however, where the corporation is so organized and controlled by another entity that maintaining the fiction of separate identities would sanction a fraud or promote injustice. *Id.* at 527. A party seeking to pierce the corporate veil must make a substantial showing that one corporation is a dummy or sham for another. *In re Estate of Wallen*, 262 Ill. App. 3d 61, 68 (1994).

¶ 13       Illinois courts will pierce the corporate veil "where: (1) there is such a unity of interest and ownership that the separate personalities of the corporation and the parties who compose it no longer exist, and (2) circumstances are such that adherence to the fiction of a separate corporation would promote injustice or inequitable circumstances." *Tower Investors*, 371 Ill. App. 3d at 1033-34. To overcome a section 2-615 motion to dismiss, the party seeking to pierce the corporate veil must adequately plead facts to satisfy both of these prongs. *South Side Bank v. T.S.B. Corp.*, 94 Ill. App. 3d 1006, 1010 (1981); *Divco-Wayne Sales Financial Corp. v. Martin Vehicle Sales, Inc.*, 45 Ill. App. 2d 192, 197 (1963). The allegations will be insufficient to withstand a motion to dismiss if they amount to conclusory statements or are unsupported by facts which justify piercing. *Hills of Palos Condominium Ass'n v. I-Del, Inc.*, 255 Ill. App. 3d 448, 479-80 (1993). We examine the two prongs in turn.

¶ 14                         Unity of Interest and Ownership

¶ 15      In determining whether the first prong is satisfied, courts will examine many factors, including "(1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere façade for the operation of the dominant stockholders." *Gass v. Anna Hospital Corp.*, 392 Ill. App. 3d 179, 186 (2009) (citing *Fontana*, 362 Ill. App. 3d at 503).

¶ 16      Plaintiffs alleged the presence of the majority of these factors in paragraphs 12 through 23 of their amended complaint:

"12. SILVER FOX never filed any annual reports with the Secretary of State.

13. SILVER FOX never had any officers. If SILVER FOX did have any officer named, any such officer had no duties whatsoever, nor any decision making role, or any role whatsoever [*sic*].

14. SILVER FOX never had any directors.

15. SILVER FOX never kept any corporate records or documents, or a corporate book.

16. SILVER FOX never observed corporate formalities in any manner.

17. SILVER FOX never held any meetings of shareholders.

18. SILVER FOX never held any meetings of directors.

19. SILVER FOX never held any annual or special meetings of any kind, whether of shareholders, officers, or directors.

20. SILVER FOX never issued any stock to anyone.

21. SILVER FOX never paid dividends to anyone.

22. SILVER FOX never had adequate capitalization and was at all times insolvent.

23. SILVER FOX never made a payment to anyone on any loan allegedly made to SILVER FOX.

\* \* \*

58. [Defendant] was the sole governing and dominating personality of the business enterprise of SILVER FOX.

59. [Defendant] exercised control over the corporation SILVER FOX to such a degree that separate personalities of the corporation and [defendant] did not exist. There was in effect unity of interest and ownership between SILVER FOX and [defendant] such that separate personalities of the corporation and individual did not exist \*\*\*.

60. The corporation SILVER FOX was the alter ego or business conduit of [defendant].

61. The corporation SILVER FOX was merely an instrumentality to conduct [defendant's] business."

Defendant does not contest that these allegations strongly indicate that there is such a unity of interest and ownership that there was no separation between defendant and Silver Fox. Instead, he argues that Illinois courts only pierce the veil to impose liability on a corporation's shareholders, officers, directors, or employees, and he was none of these.

¶ 17 Courts and commentators are split as to whether the veil may be pierced to reach nonshareholders. Compare Mark J. Loewenstein, *Veil Piercing to Non-Owners: A Practical and Theoretical Inquiry*, 41 Seton Hall L. Rev. 839, 873 (2011) (discouraging veil-piercing to reach nonshareholders), with Glenn G. Morris, *Agency, Partnership and Corporations*, 52 La. L. Rev. 493, 508 (1992) (encouraging veil-piercing to reach nonshareholders, where appropriate). We have found no comprehensive study of this area of law. However, our research shows that the majority of jurisdictions addressing this question allow veil-piercing against nonshareholders. Additionally, with few exceptions, those jurisdictions that allow veil-piercing against nonshareholders have not required that the nonshareholder hold other formal roles within the corporation–for instance, as an officer, director, or employee–but rather abandon such formalism in favor of an equitable approach focusing on the individual's domination of the corporation.

¶ 18 This issue has arisen with some frequency in New York, where courts uniformly require only equitable, rather than actual, ownership. For instance, in *Freeman v. Complex Computing Co.*, 119 F.3d 1044 (2d Cir. 1997), the defendant, like defendant in the instant case, contended that the corporate veil should not be pierced to hold him personally liable, because he was not a shareholder, officer, director, or employee of the corporation. The *Freeman* court, applying New York law, rejected that argument, holding that a nonshareholder may be the equitable owner of a corporation where he exercises considerable authority over the corporation and completely disregards the corporate form. *Id.* at 1051 (citing *Lally v. Catskill Airways, Inc.*, 603 N.Y.S.2d 619, 621 (N.Y. App. Div. 1993)); see also *Roohan v. First Guarantee Mortgage, LLC*, 948 N.Y.S.2d 200, 201 (N.Y. App. Div. 2012) ("A nonowner *** may be held liable for a corporation's torts if he or she 'dominated and controlled [it] to such an extent that [he or she] may be considered its equitable owner[ ]' [citations]." (quoting *Guilder v. Corinth Construction Corp.*, 651 N.Y.S.2d 706, 707 (N.Y. App. Div. 1997))); *In re Tyson*, 433 B.R. 68, 94 (Bankr. S.D.N.Y. 2010) ("many U.S. jurisdictions *** have recognized a doctrine of 'equitable ownership' whereby persons who are not formally affiliated with a corporation by law may nevertheless be held liable on a veil-piercing theory"); *In re Adler, Coleman Clearing Corp.*, 469 F. Supp. 2d 112, 122 (S.D.N.Y. 2007) ("actual ownership is not a prerequisite to a finding of liability"); *In re Parmalat Securities Litigation*, 377 F. Supp. 2d 390, 404 n.95 (S.D.N.Y. 2005) ("Although none of the defendants here owns shares in another, the absence of such ownership is not fatal to an *alter ego* claim." (citing *Macaluso v. Jenkins*, 95 Ill. App. 3d 461 (1981))); *In re Parmalat Securities Litigation*, 375 F. Supp. 2d 278, 292 n.75 (S.D.N.Y. 2005) ("The use of stock ownership is one means of corporate domination, but it is not the only one."); *M&A Oasis, Inc. v. MTM Associates, L.P.*, 764 N.Y.S.2d 9 (N.Y. App. Div. 2003) (noting New York cases that recognize veil-piercing against a nonshareholder); *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 900 (S.D.N.Y. 1999) ("a nonshareholder defendant may be, 'in reality,' the equitable owner of a corporation where the nonshareholder defendant 'exercise[s] considerable authority over [the corporation] ... to the point of completely disregarding the corporate form and acting as though [its] assets [are] his alone to manage and distribute.' " (quoting *Lally*, 603 N.Y.S.2d at 621))); *Goya Foods, Inc. v.*

*Unanue-Casal*, 982 F. Supp. 103, 108 (D.P.R. 1997) ("because of the equitable nature of the remedy, the court will intervene even if the alleged wrongdoer is not a legal owner of the corporation but an equitable one" (citing *State v. Easton*, 647 N.Y.S.2d 904, 909 (N.Y. Sup. Ct. 1995)); *Guilder*, 651 N.Y.S.2d at 707 ("Even if [defendants] were not [the corporation's] legal owners, it is apparent that they dominated and controlled the corporation to such an extent that they may be considered its equitable owners [citations].")); *Lally*, 603 N.Y.S.2d at 621 ("Although [defendant] maintains that he had no ownership interest in [the corporation], the evidence *** suggests that he exercised considerable authority over [it] ***."); *State v. Easton*, 647 N.Y.S.2d 904, 909 (N.Y. Sup. Ct. 1995) (recognizing equitable ownership principles); *Morris v. New York State Deptartment of Taxation & Finance*, 588 N.Y.S.2d 927, 929 (N.Y. App. Div. 1992) (same); *Morin v. Trupin*, 738 F. Supp. 98, 103 (S.D.N.Y. 1990) (same); *In re G&L Packing Co.*, 20 B.R. 789, 804 (Bankr. N.D.N.Y. 1982) (same); Matthew D. Caudill, *Piercing the Corporate Veil of a New York Not-for-Profit Corporation*, 8 Fordham J. Corp. & Fin. L. 449, 476 (2003) ("The only means by which a non-shareholder may be liable for a piercing remedial claim is under the doctrine of equitable ownership, by which a court may hold a person liable who does not actually own equity in a controlled corporation.").

¶ 19    Colorado courts also allow piercing to reach a nonshareholder. In *McCallum Family L.L.C. v. Winger*, 221 P.3d 69, 75 (Colo. App. 2009), the court held that, even though the defendant was not a shareholder, officer, or director, his lack of status was not a bar to veil-piercing, noting that "it would elevate form over substance to allow [the defendant] to avoid personal liability merely because he has avoided owning stock in his own name and assuming a corporate title such as officer or director." See also *LaFond v. Basham*, 683 P.2d 367, 369-70 (Colo. App. 1984) (shareholder status not required for veil-piercing), *overruled on other grounds by Weinstein v. Colborne Foodbotics, LLC*, 302 P.3d 263 (Colo. 2013); *Sheffield Services Co. v. Trowbridge*, 211 P.3d 714 (Colo. App. 2009) (same); but see *Walk-In Medical Centers, Inc. v. Breuer Capital Corp.*, 778 F. Supp. 1116, 1124 (D. Colo. 1991) (pre-*McCallum* case finding that "Colorado has never applied [the veil-piercing] doctrine against a person who was not a shareholder ***.").

¶ 20    Similarly, in Connecticut, veil-piercing does not turn on the defendant's status as a shareholder, officer, or director. In *Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc.*, 447 A.2d 406, 412 (Conn. 1982), the Connecticut Supreme Court held that "stock ownership, while important, is not a prerequisite to piercing the corporate veil but is merely one factor to be considered in evaluating the entire situation." The court added that it had "never required that an individual be an officer or director of the pierced corporation in order to hold him liable for the debts of the corporation." *Id.*; but see *KLM Industries, Inc. v. Tylutki*, 815 A.2d 688, 693 (Conn. App. Ct. 2003) (refusing to pierce the corporate veil, in part because of defendant's lack of stock ownership).

¶ 21    Indiana courts have reached the same conclusion. In *Fairfield Development, Inc. v. Georgetown Woods Senior Apartments Ltd. Partnership*, 768 N.E.2d 463, 473 (Ind. Ct. App. 2002), one of the defendants was not a director, officer, or shareholder of the corporation. Yet the court held that it was sufficient that he was the "principal figure" in the corporation's dealings with the plaintiff. *Id.*; see also *Konrad Motor & Welder Service, Inc. v. Magnetech Industrial Services, Inc.*, 973 N.E.2d 1158, 1165 (Ind. Ct. App. 2012) (defendant may be held liable despite being a nonshareholder); *Longhi v. Mazzoni*, 914 N.E.2d 834, 839 n.3 (Ind. Ct. App. 2009) (allowing veil-piercing against nonshareholders).

¶ 22    Louisiana likewise allows veil-piercing to reach nonshareholders. In *Middleton v. Parish of Jefferson*, 707 So.2d 454, 456 (La. Ct. App. 1998), the court held that shareholder status is only one factor in determining if veil-piercing is appropriate. The court relied on a law review article, which reasoned that, if the corporation's existence is disregarded during veil-piercing, it makes little sense to rely on the faulty corporation's shareholder status to determine veil-piercing. *Id.* at 457 (quoting Morris, *supra* ¶ 17, at 508); see also *Century Hotels v. United States*, 952 F.2d 107, 110-11 (5th Cir. 1992) (lack of stock ownership not dispositive); *Withers v. Timber Products, Inc.*, 574 So. 2d 1291, 1295 (La. Ct. App. 1991) (piercing the veil to hold a nonshareholder liable); *Brown v. Benton Creosoting Co.*, 147 So. 2d 89 (La. Ct. App. 1962) (same); but see *Riggins v. Dixie Shoring Co.*, 577 So. 2d 1060, 1065 (La. Ct. App. 1991) (veil-piercing is "applicable only against the shareholders of a corporation"), *rev'd by Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164 (La. 1991) (not expressly addressing this issue).

¶ 23    More than a dozen other jurisdictions have reached the same conclusion. See, *e.g.*, *Krivo Industrial Supply Co. v. National Distillers & Chemical Corp.*, 483 F.2d 1098, 1104 (5th Cir. 1973) (applying Alabama law) (holding that lack of stock ownership does not preclude veil-piercing); *McCormick v. City of Dillingham*, 16 P.3d 735, 744 (Alaska 2001) (Alaska courts may pierce the veil, even where defendant owns no stock); *United States Securities & Exchange Comm'n v. Levine*, 671 F. Supp. 2d 14, 34-35 (D.D.C. 2009) (applying Delaware law, holding lack of status as a shareholder, officer, or director does not preclude veil-piercing); *In re iPCS, Inc.*, 297 B.R. 283, 292-94 (Bankr. N.D. Ga. 2003) (same, applying Delaware law and collecting cases); *Penick v. Frank E. Basil, Inc.*, 579 F. Supp. 160, 166 (D.D.C. 1984) (stock ownership is just one factor in the District of Columbia's veil-piercing analysis); *Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation Co.*, 982 P.2d 853, 872 (Haw. 1999) (in Hawai'i, lack of stock ownership is not dispositive); *In re Daily*, 107 B.R. 996, 1007-08 (Bankr. D. Haw. 1989) (same), *rev'd on other grounds*, *In re Daily*, 940 F.2d 1306 (9th Cir. 1991); *Swenson v. Bushman Investment Properties, Ltd.*, 870 F. Supp. 2d 1049, 1058-59 (D. Idaho 2012) (noting that Idaho courts have not yet addressed this issue, but upholding arbitrator's decision to pierce the veil to reach a nonshareholder); *In re MacDonald*, 114 B.R. 326, 331-32 (Bankr. D. Mass. 1990) (shareholder status not necessary in Massachusetts); *Gieseke v. IDCA, Inc.*, 826 N.W.2d 816, 829 (Minn. Ct. App. 2013) (in Minnesota, shareholder status is not dispositive and a defendant who is not a shareholder, director, officer, or employee may be held liable under veil-piercing theory); *Equity Trust Co. Custodian ex rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 339 (Minn. Ct. App. 2009) (same); *Towe v. Martinson*, 195 B.R. 137, 142 (Bankr. D. Mont. 1996) (same, applying Montana law); *Medlock v. Medlock*, 642 N.W.2d 113, 126 (Neb. 2002) (in Nebraska, legal ownership is not dispositive); *Mallard Automotive Group, Ltd. v. LeClair Management Corp.*, 153 F. Supp. 2d 1211, 1215 (D. Nev. 2001) (applying Nevada law, holding that lack of stock ownership is not determinative); *LFC Marketing Group., Inc. v. Loomis*, 8 P.3d 841, 904-05 (Nev. 2000) (lack of ownership does not preclude veil-piercing in Nevada); *Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 439 (S.D.N.Y. 2010) (applying New Jersey law, holding that nonshareholder status is not dispositive); *Great West Casualty Co. v. Travelers Indemnity Co.*, 925 F. Supp. 1455, 1466 (D.S.D. 1996) (applying South Dakota law, recognizing that stock ownership is not dispositive despite holding that veil-piercing was not warranted in that case); *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1113 n.7 (D. Del. 1988) (same, applying federal veil-piercing law); *Selser v. Pacific Motor Trucking Co.*, 770 F.2d 551,

554-55 (5th Cir. 1985) (applying federal law, holding stock ownership or lack thereof is not determinative); *Establissement Tomis v. Shearson Hayden Stone, Inc.*, 459 F. Supp. 1355, 1366 n.13 (S.D.N.Y. 1978) (same); *Labadie Coal Co. v. Black*, 672 F.2d 92, 97 (D.C. Cir. 1982) (same); *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 343 (2d Cir. 1986) (applying maritime law and allowing veil-piercing even though it was unclear who the stockholders were or if stock was issued); *Baker v. Raymond International, Inc.*, 656 F.2d 173, 181 (5th Cir. 1981) (same, applying maritime law).

¶ 24    In some jurisdictions, veil-piercing law has been inconsistent. Courts applying California law have reached seemingly conflicting conclusions regarding veil-piercing to reach nonshareholders. The Ninth Circuit has held that "[o]wnership of an interest in the corporation is an essential part of the element of unity of ownership and interest." *Firstmark Capital Corp. v. Hempel Financial Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) (citing *Riddle v. Leuschner*, 335 P.2d 107, 111 (Cal. 1959)); see also *Securities & Exchange Comm'n v. Hickey*, 322 F.3d 1123, 1130 (9th Cir. 2003) ("an individual must own at least a portion of a corporation before an alter ego relationship is deemed to exist under California law"). Yet the court later held that equitable ownership is sufficient. *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) ("California case law suggests that equitable ownership is sufficient."); see also *In re Turner*, 345 B.R. 674, 676-77 (Bankr. N.D. Cal. 2006) (allowing veil-piercing to nonshareholder); *Minton v. Cavaney*, 364 P.2d 473, 475 (Cal. 1961) (veil-piercing allowed where defendant was supposed to receive shares); *Las Palmas Associates v. Las Palmas Center Associates*, 1 Cal. Rptr. 2d 301, 317 (Cal. Ct. App. 1991) (defendant's nonshareholder status resulting from recent transfer did not preclude veil-piercing).

¶ 25    Florida courts have also reached conflicting results. Compare *Walton v. Tomax Corp.*, 632 So. 2d 178, 181 n.2 (Fla. Dist. Ct. App. 1994) ("It makes no difference that [defendant] himself was not a shareholder of the corporation, because if a corporate officer who is in control of a corporation personally utilizes its assets for payment of personal obligations and generally treats the corporation as a sham, he can be liable on an alter ego theory."), and *In re Charnock*, 97 B.R. 619, 627-28 (Bankr. M.D. Fla. 1989) (same), with *Molinos Valle Del Cibao v. Lama*, 633 F.3d 1330, 1351 (11th Cir. 2011) ("Florida law, as we predict the Florida Supreme Court would decide, does not permit a plaintiff to pierce the corporate veil against a non-shareholder director.").

¶ 26    Although many states have held that a defendant's lack of shares or title does not preclude veil-piercing, some jurisdictions have reached the opposite conclusion. See *Thibodeau v. Cole*, 740 A.2d 40, 42 (Me. 1999) (in Maine, only shareholders may be held liable when piercing the corporate veil); *Marroquin v. Canales*, 505 F. Supp. 2d 283, 299 (D. Md. 2007) (applying Maryland law and holding that, "[w]hile it is true that some jurisdictions have allowed suit against individuals who are not technically named directors or employees of the corporation, those cases involve instances in which individuals exercise sufficient control of the corporation to be considered de facto corporate officers"); *Allred v. Exceptional Landscapes, Inc.*, 743 S.E.2d 48, 53-54 (N.C. Ct. App. 2013) (North Carolina courts refuse to pierce the veil to reach a nonshareholder).

¶ 27    Texas courts, like their New York counterparts, have had many occasions to address this issue. Unlike New York courts, however, courts applying Texas law have frequently held that shareholder status is a prerequisite to veil-piercing. In *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006), the court observed that "[t]he great weight of Texas

precedent indicates that, for the alter ego doctrine to apply against an individual under this test, the individual must own stock in the corporation." See also *Castillo v. First City Bancorporation of Texas, Inc.*, 43 F.3d 953, 963 (5th Cir. 1994) (claim that veil should be pierced to reach nonshareholder was "not just meritless, but silly"); *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, 643-44 (5th Cir. 1991) ("Texas courts will not apply the alter ego doctrine to *** pierce the corporate veil unless one of the 'alter egos' owns stock in the other."); *Zahra Spiritual Trust v. United States*, 910 F.2d 240, 246 (5th Cir. 1990) ("Texas courts will not treat a corporation and an individual as one and the same unless the individual has some ownership interest in the corporation."); *Williams v. Wilson*, 939 F. Supp. 543, 550 (W.D. Tex. 1995) ("For an entity to be the alter ego of another, at least one of the entities must own stock in the other."); *Americas Insurance Co. v. Engicon, Inc.*, 894 F. Supp. 1068, 1073 (S.D. Tex. 1995) (same); *Stewart & Stevenson Services, Inc. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 108 (Tex. App. 1994) (same); *Lane v. Dickinson State Bank*, 605 S.W.2d 650, 653 (Tex. Civ. App. 1980) (same); *Patterson v. Wizowaty*, 505 S.W.2d 425, 428 (Tex. Civ. App. 1974) (same); *George v. Houston Boxing Club, Inc.*, 423 S.W.2d 128, 132 (Tex. Civ. App. 1967) (same); James Gerard Gaspard II, *A Texas Guide to Piercing and Preserving the Corporate Veil*, 31 Bull. Bus. L. Sec. St. B. Tex. 24, 39 (1994) (Texas courts will not pierce the veil "unless the individual has some ownership interest in the corporation.").

¶ 28    Even in Texas, however, the law in this area has not been uniform. See *Riquelme Valdes v. Leisure Resource Group, Inc.*, 810 F.2d 1345, 1354 (5th Cir. 1987) ("we predict that Texas courts would not invariably require full and unfettered ownership of the corporation whose veil is sought to be pierced on alter ego grounds"); *In re Moore*, 379 B.R. 284, 289 (Bankr. N.D. Tex. 2007) (adopting equitable ownership approach); *Phillips v. United Heritage Corp.*, 319 S.W.3d 156, 162-63 (Tex. App. 2010) ("the veil piercing theories and principles that are available and used to hold shareholders individually liable *** should apply equally and in the same manner to non-shareholder officers and directors of that entity"); *Love v. State*, 972 S.W.2d 114, 117 (Tex. App. 1998) ("shareholder status *** is not a prerequisite to liability under the sham to perpetrate a fraud theory"); *In re Guyana Development Corp.*, 168 B.R. 892, 908 (Bankr. S.D. Tex. 1994) (direct stock ownership not required for veil-piercing); see also *Lopez v. Garbage Man, Inc.*, No. 12-08-00384-CV, 2011 WL 1259523, *3 (Tex. App. Mar. 31, 2011) (veil-piercing may impose liability on shareholders, officers, and directors (citing *Phillips*, 319 S.W.3d at 159)).

¶ 29    In short, the weight of authority supports the conclusion that lack of shareholder status–and, indeed, lack of status as an officer, director, or employee–does not preclude veil-piercing. Illinois falls in line with the majority. In *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491 (2005), plaintiff property owners hired defendant's construction corporation to construct a single-family home. The builder abandoned the project, and plaintiffs sued, seeking to pierce the corporation's veil and hold defendant personally liable. *Id.* at 494-95. Following a bench trial, the trial court pierced the veil and held defendant and his corporation jointly and severally liable. *Id.* at 499. On appeal, defendant argued that the trial court erred in piercing the corporate veil, because he was a nonshareholder and, therefore, the unity-of-interest-and-ownership prong could not be met. *Id.* at 500-01. The *Fontana* court disagreed. *Id.* at 501. Noting that piercing the corporate veil is an equitable remedy that looks to substance over form, the court held that status as a nonshareholder does not preclude piercing the corporate veil, because equitable ownership may satisfy the unity-of-

- 10 -

interest-and-ownership prong. *Id.* at 501, 503; see also *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 381 (7th Cir. 2008) ("Under Illinois law, it is possible for a non-shareholder to be found personally liable under a veil-piercing theory."); *Macaluso v. Jenkins*, 95 Ill. App. 3d 461, 465-66 (1981) (although defendant was a nonshareholder, his equitable ownership and control justified piercing the corporate veil); Markus May, *Helping Business Owners Avoid Personal Liability*, 95 Ill. B.J. 310, 311 (2007) (discussing Illinois law, stating "a non-shareholder individual can be personally liable for a corporation's debts if the two-prong test for piercing the corporate veil is met").

¶ 30    Defendant argues that *Fontana* is distinguishable, because the defendant in that case was the corporation's president. In *Fontana*, however, the defendant's liability did not turn on his status as an officer of the corporation. Indeed, the court did not mention the defendant's office in its piercing analysis. *Fontana*, 362 Ill. App. 3d at 500-03. Rather, its decision rested on the equitable nature of veil-piercing, specifically, whether a person exercises equitable ownership and control over a corporation, such that separate personalities no longer exist. *Id.* at 501.

¶ 31    Considering shareholder status as a factor rather than a prerequisite to veil-piercing also makes good sense. We find Professor Glenn G. Morris's logic persuasive:

> "The very point of veil-piercing is to avoid injustice by disregarding the formal structure of a transaction or relationship in favor of its substance–to impose personal liability on persons who have, in substance, run their nominally incorporated business in a way that makes it unfair to allow them to deny their responsibility for the obligations of the business by interposing the corporation's separate legal personality. But if the corporation's very existence is to be disregarded in a veil-piercing case, it hardly makes sense to resurrect the stock ownership records of the legally nonexistent corporation as a means of limiting the class of persons that may be found to have acted in a way that justifies making them personally liable under a veil-piercing theory." Morris, *supra* ¶ 17, at 508.

There are many ways to organize a sham corporation. In some instances, the wrongdoer neither holds stock nor serves in an official capacity. Making officer, director, or shareholder status a prerequisite to veil-piercing elevates form over substance and is therefore contrary to veil-piercing's equitable nature.

¶ 32    Finally, as we noted above, the failure to issue stock is a factor in determining whether the unity-of-interest-and-ownership prong has been met. *Gass*, 392 Ill. App. 3d at 186 (citing *Fontana*, 362 Ill. App. 3d at 503); see also *Hills of Palos*, 255 Ill. App. 3d at 480 ("failure to issue stock" is a factor in determining whether to pierce the corporate veil). Here, in their amended complaint, plaintiffs alleged that "SILVER FOX never issued any stock to anyone." If plaintiffs' allegation is true, the reason defendant was not a Silver Fox shareholder is that Silver Fox had no shareholders. It would make little sense to hold that, where a corporation fails to issue stock, defendant's status as a nonshareholder both precludes veil-piercing and is a factor in favor of it. Thus, we hold that plaintiffs have alleged sufficient facts to satisfy the first veil-piercing prong.

¶ 33                              Promotion of Injustice or Inequity

¶ 34    The parties also disagree as to whether plaintiffs have pled sufficient facts to satisfy the second veil-piercing prong. Under that prong, we must determine whether the circumstances

are such that adherence to the fiction of a separate corporation would promote injustice or inequitable circumstances. *Fontana*, 362 Ill. App. 3d at 500; *Gallagher v. Reconco Builders, Inc.*, 91 Ill. App. 3d 999, 1004 (1980). Specifically, we must ask whether there is some unfairness, such as fraud or deception, or the existence of a compelling public interest that justifies piercing. *Fontana*, 362 Ill. App. 3d at 507.

¶ 35    The parties focus on paragraphs 24 through 25 and 52 through 56 of the amended complaint. We also find paragraphs 62 through 65 relevant:

"24. [Defendant] owned and operated other businesses ***. Those businesses had in the past purchased bakery goods from [plaintiffs]. [Defendant] opened SILVER FOX to supply the bakery goods directly to his other businesses thereby interfering with and taking the business away from [plaintiffs].

25. SUNA allowed and permitted [defendant] to take care of everything in the business while she ran the bakery.

* * *

52. It was [defendant's] decision alone to start the SILVER FOX bakery business. SUNA had no previous bakery experience and ALI did nothing in the business or the corporation.

53. [Defendant] created and started SILVER FOX and hired SLOAN [Mama Gramm's head baker] for the express purpose of switching over accounts, taking customer lists, and using the trade secrets and recipes belonging to and owned by Plaintiffs.

54. [Defendant] had knowledge that SLOAN was employed by [plaintiffs] as its head baker and assistant manager. [Defendant] alone was directly involved in hiring SLOAN.

55. [Defendant] was directly involved in and had knowledge of the switching over accounts to SILVER FOX as he was the owner of many of the various businesses which had previously done business with Plaintiffs.

56. [Defendant] had direct contact with [plaintiffs'] bakery as his other businesses had been customers of [plaintiffs'] bakery.

* * *

62. Adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, and/or promote inequitable consequences on third persons, such as Plaintiffs dealing with the corporation, SILVER FOX.

63. By reason of the foregoing, [defendant] perpetrated an injustice against Plaintiffs.

64. [Defendant] intended to perpetrate an injustice upon Plaintiffs or had knowledge with substantial certainty that an injustice would be perpetrated upon Plaintiffs by his actions.

65. As a direct and proximate result of the wrongful acts of [defendant], Plaintiffs sustained the injuries as alleged in the underlying complaint."

We must determine whether these allegations are sufficient to survive section 2-615 dismissal.

¶ 36    In *Hills of Palos Condominium Ass'n v. I-Del, Inc.*, 255 Ill. App. 3d at 453, a condominium association and its individual owners brought multiple claims against the condominium

- 12 -

developer to recover damages stemming from alleged construction defects. The plaintiffs sought to amend their complaint, adding the developer's president as a defendant under a piercing theory. *Id.* at 478. The plaintiffs alleged that the president " 'dominated' " the corporation, and the corporation was the president's alter ego. *Id.* The plaintiffs also alleged that the president " 'treated the assets *** as his own.' " *Id.* The complaint alleged little else. *Id.* The appellate court concluded, in part, that the allegations were insufficient to pierce the corporate veil, because they were conclusory and unsupported by specific facts showing "that the observance of the fiction of separate corporate existence would sanction a fraud or promote injustice against the [plaintiffs]." *Id.* at 481.

¶ 37    In contrast, in *Edwards v. Chicago & Northwestern Ry. Co.*, 79 Ill. App. 2d 48, 50-51 (1967), the plaintiff sought to pierce the corporate veil in order to reach the parent company of a subsidiary corporation that had already dissolved. The court held that the complaint sufficed because the pleadings alleged facts showing unity of interest and that the defendant had fraudulently induced the plaintiff to refrain from filing suit until it was too late to sue the dissolved subsidiary. *Id.* at 53-55. In reaching its decision, the *Edwards* court emphasized that Illinois civil procedure directs courts to liberally construe the plaintiff's pleadings. *Id.* at 54.

¶ 38    Here, though much of plaintiffs' complaint is conclusory and unsupported by facts, ultimately, it is more like *Edwards* than *Hills of Palos Condominiums Ass'n*. Plaintiffs' allegations, when liberally construed, allow for the inference that refusing to pierce Silver Fox's corporate veil would promote injustice.

¶ 39    Paragraphs 62 through 65 of plaintiffs' amended complaint are conclusory and fall short of satisfying the second prong. They recite the law in this area, but fail to explain *why* "[a]dherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, and/or promote inequitable consequences"; *how* defendant "perpetrated an injustice"; or *what* "injuries" were alleged in the underlying complaint. These paragraphs are, in short, similar to the allegations in *Hills of Palos Condominiums Ass'n.* Paragraphs 24 through 25 and 52 through 56 are insufficient, because they describe benign conduct: opening Silver Fox to supply defendant's other businesses, hiring another company's head baker, "taking the business away from" plaintiffs, and having previous contact with plaintiffs' bakery. Businesses often engage in these activities in a competitive market–they do not rise to the level of unfairness, inequity, or violation of the Illinois Trade Secrets Act.

¶ 40    We find, however, that paragraph 53 sufficiently alleges unfairness and inequity, such that we may infer a violation of the Illinois Trade Secrets Act. Under the Act, misappropriation of trade secrets includes acquiring through improper means formulas, methods, and customer lists, where they are sufficiently secret to derive economic value from being unknown to others and are the subject of reasonable efforts to maintain their secrecy. 765 ILCS 1065/2 (West 2010). Liberally construing the allegation in paragraph 53, we may infer that defendant hired Mama Gramm's head baker to obtain its customer lists and recipes in violation of the Act. This is sufficient to meet the veil-piercing test's second prong for purposes of surviving section 2-615 dismissal.

¶ 41    In reaching this conclusion, we reiterate that, under section 2-615, we must view the facts alleged in the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts–as well as reasonable inferences drawn from those facts–as true. *Doe-3*, 2012 IL 112479, ¶ 16; *Marshall*, 222 Ill. 2d at 429. Here, plaintiffs' allegations concerning the second prong should have been clearer. Had plaintiffs explained precisely how defendant used Silver Fox to

violate the Illinois Trade Secrets Act or otherwise engaged in fraud or deception, our analysis would be much easier. Ultimately, however, plaintiffs' amended complaint is sufficient to survive section 2-615 dismissal.

CONCLUSION

This area of law is still developing, and given the lean factual pleadings in the complaint, we see this as a close case, and our disagreement with the able and experienced trial judge is tempered with great respect for his careful consideration of this issue. Nonetheless, we hold that the trial court erred in granting defendant's section 2-615 motion to dismiss. We, of course, express no opinion as to the ultimate issue of whether the corporate veil should be pierced in this case. That will be determined after evidence has been submitted. For the foregoing reasons, we reverse the judgment of the trial court and remand for further proceedings.

Reversed and remanded.