# Illinois Official Reports

## Appellate Court

---

### *RDC Case Creek Trails, LLC v. Metropolitan Airport Authority*,
### 2020 IL App (3d) 190083

---

| | |
|---|---|
| Appellate Court Caption | RDC CASE CREEK TRAILS, LLC, an Illinois Limited Liability Company, and RAUFEISEN DEVELOPMENT AIRPORT PROPERTIES, LLC, an Illinois Limited Liability Company, Plaintiffs-Appellants, v. THE METROPOLITAN AIRPORT AUTHORITY OF ROCK ISLAND COUNTY, ILLINOIS, an Illinois Municipal Corporation, Defendant-Appellee. |
| District & No. | Third District<br>No. 3-19-0083 |
| Filed | May 1, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 12-L-136; the Hon. Lori R. Lefstein and the Hon. Gregory G. Chickris, Judges, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | John F. Doak and Aaron M. Curry, of Katz Nowinski P.C., of Moline, for appellants.<br><br>Roger L. Strandlund and Robert T. Park, of Califf & Harper, P.C., of Moline, for appellee. |

Panel          JUSTICE O'BRIEN delivered the opinion of the court, with opinion.
Justices McDade and Schmidt concurred in the judgment and opinion.

## OPINION

¶ 1      Plaintiffs RDC Case Creek Trails, LLC, and Raufeisen Development Airport Properties, LLC (collectively RDC), entered into an agreement with defendant the Metropolitan Airport Authority of Rock Island County (Airport) and the City of Moline (City) (which is not part of the lawsuit) for RDC to develop the airport property. The Airport terminated the agreement based on RDC's failure to timely obtain financing, and RDC thereafter brought a complaint alleging breach of express warranty. On cross-motions for summary judgment, the trial court granted the Airport's motion, finding that RDC failed to provide notice of the Airport's breach as required by the parties' agreement. RDC appealed. We reverse and remand.

¶ 2                              FACTS

¶ 3      Plaintiffs RDC Case Creek Trails, LLC and Raufeisen Development Airport Properties, LLC, defendant Airport, and the City of Moline entered into an agreement whereby RDC would develop the airport property with a hotel and conference center, in part.

¶ 4      The agreement included a warranty provision that provided:

"The Airport represents and warrants to the City and Developer that it is empowered and authorized to execute and deliver this Agreement and to lease and acquire the real property contemplated to be leased and acquired as described herein, and to make and keep the promises, covenants and commitments made herein and to execute and deliver all other agreements and documents, if any, required hereunder to be executed and delivered. This Agreement has been, and each such document at the time it is executed and delivered will be, duly executed and delivered on behalf of Airport pursuant to its legal power and authority to do so. When executed and delivered to City and Developer, all such agreements shall constitute a legal, valid, and binding obligation of the Airport, enforceable in accordance with the terms of all such agreements."

The warranty was subject to a survival clause.

¶ 5      The agreement required RDC, as a condition precedent, to obtain financing within 90 days of its execution, as follows:

"The Parties agree that the performance of their respective obligations set forth herein is specifically contingent upon the satisfaction and performance of the Developer having obtained debt and equity financing, or commitments for the same for the Phase I of the Project within ninety (90) days of the execution of this Agreement. Therefore, Developer agrees to provide sufficient equity and construction financing necessary to complete Phase I of the Project as described herein and the City and Airport will have no obligation to perform any action otherwise required herein until Developer provides the City and Airport with evidence of its equity financing and construction debt financing commitment to complete the entire project in accordance with terms acceptable to City and Airport."

¶ 6 The agreement included a notice requirement:

"In the event any party is in default hereunder (the 'Defaulting Party'), the other party(ies) ('the Non-Defaulting Party(ies)') shall be entitled to take any action allowed by applicable law by virtue of said default provided that the Non-Defaulting Party first gives the Defaulting Party written notice of default describing the nature of the default, what action, if any, is deemed necessary to cure the same and specifying a time period of not less than thirty (30) days in which the default may be cured by the Defaulting Party or such additional reasonable time as necessary to cure, provided the Defaulting Party has commenced a cure within the time herein provided and diligently and continuously continues to resolve the default as is reasonable under the then circumstances."

The agreement required notice to be in writing, signed by the party giving notice, and considered given when hand-delivered, mailed by certified mail with return receipt requested or by overnight delivery by courier.

¶ 7 The agreement provided remedies for a default as follows:

"If, in Developer's judgment, City or Airport is in material default of this Agreement, the Developer shall provide City or Airport, as the case may be with a written statement indicating in adequate detail any failure on City's or Airport's part to fulfill its obligations under this Agreement. Except as required to protect against further damages, Developer may not exercise any remedies against City or Airport in connection with such failure until thirty (30) days after giving such notice. If such default cannot be cured within such thirty (30) day period, such thirty (30) day period shall be extended for such time as is reasonably necessary for the curing of the same, so long as City or Airport diligently proceeds with sure cure ***."

¶ 8 Attached to the complaint were "Assurances" for "Airport Sponsors" such as the Airport, which received federal grant money to purchase the property at issue. The assurances contained the following restrictions: that the Airport "will not sell, lease, encumber, or otherwise transfer or dispose of any part of its title or other interests in the property shown on Exhibit A to this application" and that Airport plans, amendments, revisions or modifications of the Airport layout "shall be subject" to Federal Aviation Administration (FAA) approval.

¶ 9 In August 2011, 10 months after the agreement was executed, the Airport gave RDC notice of default of the agreement based on RDC's failure to obtain financing. RDC was given a 30-day opportunity to cure, per the agreement. In February 2012, the Airport gave RDC notice of termination based on lack of financing. RDC filed its initial complaint in November 2012 and a fifth amended complaint in March 2016. The complaint alleged a breach of the express warranty that the Airport had the ability to lease the property to be developed. The Airport answered and raised the affirmative defenses of RDC's failures to provide notice of default and obtain financing. It also raised counterclaims, including RDC's breach of contract based on its lack of financing.

¶ 10 The parties filed cross-motions for summary judgment on the issue of whether RDC was required to provide a notice of default to the Airport prior to bringing its complaint. The trial court granted the Airport's motion, finding there was no genuine issue of material fact regarding RDC's obligation to send a notice of default and its failure to do so. The court denied RDC's motion for summary judgment. RDC sought reconsideration, which the trial court also denied. The trial court included Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016)

language in the order, and RDC timely appealed.

¶ 11                                                     ANALYSIS

¶ 12        RDC presents two arguments on appeal. It argues that the trial court erred when it granted summary judgment to the Airport and denied its cross-motion for summary judgment on the notice issue. It also argues that the trial court erred when it denied its motion for reconsideration.

¶ 13        We begin with RDC's assertion that the court erred in its summary judgment rulings. RDC asserts that the trial court incorrectly determined it was required to provide notice of the Airport's breach of warranty after the Airport terminated the agreement as a prerequisite to filing its complaint. Alternatively, RDC asserts that its compliance was waived because it was not required to perform a futile act and that the trial court's prior rulings support summary judgment in its favor.

¶ 14        Summary judgment is appropriate where the pleadings, depositions, admissions on file, and affidavits, if any, establish there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). Contract interpretation is appropriate for disposition by summary judgment. *Id.* When interpreting a contract, the court's primary goal is to ascertain the intent of the parties. *Quality Transportation Services, Inc. v. Mark Thompson Trucking, Inc.*, 2017 IL App (3d) 160761, ¶ 25. When the contract is clear and unambiguous, its language is the best indicator of the parties' intent. *Id.* Contracts are construed as a whole, considering each provision. *Id.* Courts will not construe a contract contrary to its plain meaning or in a manner that nullifies or makes provisions meaningless. *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011). A court presumes that language inserted in a contract is inserted purposefully and will give effect to the language of the agreement. *Id.* When the parties have submitted cross-motions for summary judgment, the facts are not in dispute, and the court makes its determination as a matter of law. *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 334 (2005). This court reviews the trial court's decision on motions for summary judgment *de novo*. *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003).

¶ 15        A party is not required to send notice when doing so would be futile. *PNC Bank, National Ass'n v. Wilson*, 2017 IL App (2d) 151189, ¶ 25. Where a contract has been terminated or ceases to exist, the act of notice regarding a contractual issue is excused as futile. See *id.* "Where a 'process *** utilized did not occur exactly as the statute dictates, the law would not require a futile act to redo the process.' " *Aurora Loan Services, LLC v. Pajor*, 2012 IL App (2d) 110899, ¶ 27 (quoting *Goldberg v. Astor Plaza Condominium Ass'n*, 2012 IL App (1st) 110620, ¶ 73). An otherwise required demand is not necessary where the demand would be futile under the circumstances. *First Illini Bank v. Wittek Industries, Inc.*, 261 Ill. App. 3d 969, 970-71 (1994).

¶ 16        We conclude that, once the Airport terminated the contract, any obligations under it also terminated. One such obligation was RDC's responsibility to send notice to the Airport of the Airport's alleged breach of the express warranty. It would have been futile for RDC to send a notice of default of a provision in a contract that was terminated. The notice provision did not include a survival clause necessitating that RDC provide notice of a breach of warranty after termination of the contract. On two prior occasions, the trial court ruled that RDC's obligations ceased once the Airport terminated the contract and RDC was not required to provide notice

to the Airport of its alleged breach. In December 2014, the court granted the Airport's motion to dismiss RDC's second amended complaint. The court found that the agreement was terminated in March 2012, and "[w]ith no agreement in effect, plaintiffs had no obligation to notify defendant of its alleged breach" before filing this complaint. It made the same finding in an October 2015 order in which it granted the Airport's motion to dismiss RDC's third amended complaint. The court then reversed itself in its summary judgment ruling, finding that, because the Airport's breach took place before the Airport terminated the contract, the Airport was obligated to "make reparations for the breach."

¶ 17　　The court surmised that, had RDC served notice of default, the parties could have attempted to resolve the issues. We disagree and consider, as discussed above, any notice of default by RDC to Airport after the contract terminated would have been futile. Although interlocutory orders are not binding, we agree with the court's reasoning and logic in its earlier orders. See *Kemner v. Monsanto Co.*, 112 Ill. 2d 223, 240 (1986) (interlocutory orders may be reviewed, modified, or vacated at any time before final judgment). The court rejected the Airport's contention that it had no obligations under the contract until RDC secured financing, pointing out that RDC sustained damages in its attempts to cure the Airport's alleged warranty breach. The trial court also rejected the Airport's assertion that RDC was aware of and agreed to the FAA requirements when the agreement was executed. The court concluded that the agreement's provisions requiring FAA approval concerned actions to take place on the property, not the Airport's ability to lease the property. We find these interpretations of the agreement to be in accord with the language of the agreement.

¶ 18　　Once the Airport terminated the contract, the agreement was no longer in effect. Since the agreement was no longer in effect, RDC was not bound by the notice provision and was not required to provide a notice of default to the Airport prior to pursuing a legal remedy. Therefore, we find the court's order granting summary judgment in favor of the defendant Airport on the issue of notice and denying it as to plaintiff RDC's cross-motion for summary judgment on the affirmative defense of lack of notice was error.

¶ 19　　　　　　　　　　　　　　　　CONCLUSION

¶ 20　　For the foregoing reasons, the judgment of the circuit court of Rock Island County granting summary judgment in favor of the Airport on the issue of notice is reversed, and the judgment of the circuit court of Rock Island denying summary judgment in favor of RDC as to the affirmative defense of lack of notice is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion.

¶ 21　　Reversed and remanded.