**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210259-U

Order filed November 22, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| PARA DYNAMIC ENTERPRISES, LLC, as assignee of Purple Shovel, LLC, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| COLLEEN LAMB-FERRARA, as Administrator of the Estate of Matthew J. Lamb, deceased, | ) ) ) ) | Appeal No. 3-21-0259 Circuit No. 20-CH-502 |
| Defendant-Appellee, | ) ) | |
| and | ) ) | |
| MATT LAMB STUDIOS, LLC, | ) ) | Honorable John C. Anderson, |
| Defendant. | ) | Judge, Presiding |

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Daugherity and Hauptman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court erred in granting summary judgment where a genuine issue of material fact exists as to whether the court should pierce the corporate veil.

¶ 2    Plaintiff Para Dynamic Enterprises, LLC, and defendant Colleen Lamb-Ferrara, as administrator of the Estate of Matthew J. Lamb, deceased, filed cross-motions for summary judgment in Para Dynamic's action to pierce the corporate veil of Matt Lamb Studios, LLC and reach the assets in Lamb's estate. The trial court denied Para Dynamic's summary judgment motion and granted the Estate's summary judgment motion. Para Dynamic appealed. We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4    Matt Lamb Studios, LLC (Studios) was incorporated on September 26, 2007. An amended operating agreement was executed in January 2009 providing for two member classes: A and B. Class A members were Sheila Lamb Gabler and David Sabin, who were designated the managers of Studios and in charge of operations. The Class B member was Matt Lamb, Ltd., which was to contribute assets in the form of pieces of Matt Lamb's artwork. Matt Lamb was a renowned artist who showed his artwork around the world. Gabler and Colleen Lamb-Ferrara were his daughters. Lamb died on February 18, 2012, and an estate was opened and remained pending in Florida. Lamb-Ferrara was designated the estate's personal representative after Gabler was removed as executor.

¶ 5    On July 31, 2012, Studios entered into a contract with Purple Shovel, LLC, a logistics services company, to transport, secure and store Lamb's artwork. Gabler executed the contract. Studios did not pay for the services rendered by Purple Shovel. Purple Shovel assigned its rights to Studios' receivables to Para Dynamic in December 2017. It also assigned any interest, title or right to Lamb's artwork that Purple Shovel held as collateral, of which Para Dynamic took control in January 2018. Para Dynamic filed a complaint in February 2019 against Studios and obtained a $1,178,003.31 judgment by default in September 2019.

¶ 6    Para Dynamic filed a citation to discover assets against Studios, which Studios did not answer. A citation examination deposition took place with Gabler in December 2019. She testified that she was Lamb's daughter and the sole owner of Studios. Studios was a "shell company" set up during Lamb's lifetime "just in case." Gabler explained that no one used Studios; it was an "empty company" with "no reason for it." She was the company's registered agent "to hold it." Studios currently had no assets, never had any assets, and never generated any revenue. Gabler denied that Studios owned any of the trademarks identified as purportedly owned by Studios. To her recollection, there were no managers or members of Studios. Documents provided by the Secretary of State's office listed her as the manager and she agreed she was the manager. The documents also indicated Studios was not in good standing as of September 1, 2019, and Gabler did not know if it was in good standing prior to that date. Gabler did not know she was listed as a contact on the MattLamb.com website.

¶ 7    Gabler and Lamb operated Studios together during his lifetime. They handled the tax returns together and she managed them after his death. She continued to manage Studios after Lamb died. Lamb had contracted with Purple Shovel before he died to transport his artwork from Spain to Ireland but the art was stolen in transit. She did not know if Lamb had negotiated with Purple Shovel for himself or on behalf of Studios. She did not know if Lamb, and subsequently the Estate, owned Lamb's artwork. Gabler was the initial executor of Lamb's estate prior to being removed. At that time, the estate owned more than 5000 pieces of artwork.

¶ 8    Para Dynamic recorded the $1,178,003.31 judgment against Studios on February 20, 2020. Para Dynamic then filed the instant action the same month, seeking to pierce the corporate veil and satisfy the judgment against Studios from the assets of the Estate. In the complaint, Para Dynamic alleged, in part, that "Following Matt Lamb's death *** Studios contracted with Purple

Shovel." The complaint further alleged that Gabler and Lamb managed Studios. The Estate answered the complaint and attached a copy of the contract between Gabler and Purple Shovel indicating a $45,750 fee for Purple Shovel's services with 18% interest per year on unpaid balances. Studios was involuntarily dissolved on March 13, 2020. In July 2020, the trial court entered a default judgment against Studios.

¶ 9        Para Dynamic and the Estate both moved for summary judgment in March 2021. In its summary judgment motion, Para Dynamic argued that the Estate was the sole beneficiary of Studios's operation and Studios's entire business was to transport and store Lamb's artwork, which became assets of the Estate, which became the sole beneficiary of Studios's actions. Para Dynamic argued these facts established Lamb's equitable ownership in Studios. In support of its motion, Para Dynamic attached the transcripts from Gabler's deposition.

¶ 10       In its summary judgment motion, the Estate argued that the contract with Purple Shovel was executed after Lamb's death, Lamb was not a member or owner of Studios and was not an alter ego of Studios. Attached to the Estate's summary judgment motion was a list of pieces of artwork and the rights to them that Matt Lamb, Ltd. was to contribute to Studios as an initial capital contribution per the amended operating agreement. Also attached to the Estate's summary judgment motion was an affidavit from David Para, the sole and managing member of Para Dynamic, which held a 47% interest in Purple Shovel. The affidavit, dated October 4, 2018, was submitted in the federal case Para Dynamic initially filed against Gabler and Studios, which was dismissed for lack of jurisdiction. *Para Dynamic Enterprises, LLC v. Gabler*, No. 18-CV-04579 (N.D. IL 2018). In the affidavit, Para attested that it was after Lamb's death that Gabler and Purple Shovel executed the contract for Purple Shovel to secure and transport Lamb's artwork to several exhibitions held to honor his legacy. Para further attested that the negotiations began around Spring

4

2012 and the communications were mainly with Gabler and Jonathan Daudell, whom Para described as the executive director of Studios.

¶ 11        The Estate responded to Para Dynamic's summary judgment motion, arguing that Studios was formed in 2007 to market and sell artwork, enter into licensing agreements, and use the intellectual property rights associated with the artwork, and was not an alter ego of Lamb or the Estate. Para Dynamic responded to Gabler's summary judgment motion, arguing that Gabler said Lamb contacted Purple Shovel; Studios was formed as a shell company with equitable ownership held for Lamb and subsequently, the Estate; Studios failed to observe corporate formalities; and Studios was inadequately capitalized.

¶ 12        Both parties submitted statements of material facts. Para Dynamic's statement provided, in part, that Gabler and Lamb operated Studios; that Studios had no assets or revenue and was a shell company; that Lamb owned his artwork; that Lamb contracted with Purple Shovel to transport paintings from Spain to Ireland; and that the Estate owned the artwork after Lamb's death. Attached to Para Dynamic's statement of facts was a second affidavit of Para, dated April 17, 2021. In that affidavit, Para attested that he was not involved in the contract negotiations between Purple Shovel and Studios. He recanted his earlier statement that the contract was executed after Lamb's death, a fact he said he had surmised but did not know. He changed his statement after hearing Gabler's answers in the citation deposition and deferred to her testimony that Lamb was involved in the contract negotiations. He references a third affidavit, dated September 5, 2019, which he submitted in the breach of contract action as a prove-up for damages. In that affidavit, Para attested that Purple Shovel was engaged by Studios after Lamb's death. Attached to the Estate's statement of material facts was Studios's 2009 amended operating agreement. Attached to the agreement was a schedule listing Lamb's paintings meant to capitalize Studios, a

compensation schedule for Sabin and Gabler indicating Gabler was to receive $160,000 plus expenses annually, and spousal consents.

¶ 13    The Estate's statement of material facts provided, in part, that Studios was incorporated in 2007; its members entered into an operating agreement; Studios had Class A and Class B members; the Class A members were Gabler and Sabin, who were managers of Studios; Matt Lamb, Ltd. was the Class B member and contributed collateral; Lamb did not operate and was not involved in Studios and he was not an owner or member of Studios. Attached to the statement of material facts was Para Dynamic's proof of claim in the bankruptcy action and attached to the proof of claim was the July 2012 email correspondence between Purple Shovel and Gabler setting forth the terms of the contract. The contractual provisions provided, in part, that Purple Shovel was to move 500 paintings from storage in Spain to the United Kingdom, where some artwork would be stored and other pieces would be shipped to Dubai. The contract requested staff persons from Studios assist in the packing and documentation process in Spain. Another provision stated that Gabler warranted the paintings belonged to her or Studios. Finally, the contract indicated Gabler obtained transit insurance in the amount of $250,000.

¶ 14    Purple Shovel's invoice to Studios was also attached to the proof of claim. It indicated that the initial billing was dated June 22, 2012, in the amount of $219,130, and referenced a number of job and/or invoice numbers. Although the contract specified transport of Lamb's artwork from Spain to England. Gabler stated in her deposition that Purple Shovel provided transport of artwork from Spain to Ireland. Para attested to several transports provided by Purple Shovel, including artwork moved from Wisconsin to Dubai.

¶ 15    A hearing took place on the cross-motions for summary judgment. Following the hearing, the court noted that it was not sure summary judgment was appropriate but had not yet determined

whether there was a genuine issue of material fact. After taking the matter under advisement, the trial court denied Para Dynamic's summary judgment motion and granted the Estate's motion for summary judgment. The trial court stated that there was no evidence of fraud presented; that the use of a "corporate form is not inherently fraudulent'; and that it had considered the standards to pierce the corporate veil and that Para Dynamic had "not satisfied those requirements." Para Dynamic appealed.

¶ 16                                    II. ANALYSIS

¶ 17        Para Dynamic argues that the trial court should have granted summary judgment in its favor. It submits that it presented sufficient evidence to warrant the trial court to pierce the corporate veil and allow it to pursue its judgment against the Estate. According to Para Dynamic, the trial court did not address the applicable factors to determine whether to pierce the corporate veil, and if it had, it would have found the factors in support of its request to pierce the corporate veil. Para Dynamic further contends that the Estate's arguments in favor of summary judgment were contradicted by the record and, in the alternative, that the evidence was insufficient to support the finding. Para Dynamic urges this court to reverse the grant of summary judgment in favor of the Estate and grant summary judgment in its favor. It seeks remand for the trial court to enter an order piercing the corporate veil and entering judgment against the Estate in the amount of $1,178,003.31.

¶ 18        Summary judgment is appropriate when the pleadings, depositions, admissions on file and affidavits, if any, show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). The purpose of summary judgment is not to try a question of fact but to determine whether one exists. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007). Summary judgment is not appropriate and " 'should not be

7

allowed unless the moving party's right to judgment is clear and free from doubt.' " *Id.* (quoting *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 424 (1998)). Where cross-motions for summary judgment are filed, the parties agree the facts are not in dispute, and the court rules on the motions as a matter of law. *RDC Case Creek Trails, LLC v. Metropolitan Airport Authority*, 2020 IL App (3d) 190083, ¶ 14. "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The function of the reviewing court is to decide whether the trial court correctly found no genuine issue of material fact existed and that summary judgment was properly granted for one party and the cross-motion was properly denied for the other party. *Id.* ¶ 16. We review the trial court's determination on summary judgment motions *de novo*. *RDC Case Creek Trails, LLC*, 2020 IL App (3d) 190083, ¶ 14.

¶ 19    Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013) instructs regarding affidavits submitted in support or oppositions of motions for summary judgment. It provides that the affidavits:

> "shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. Rule 191(a) (eff. Jan. 4, 2013).

Affidavits filed in support or opposition of a summary judgment motion cannot merely state legal conclusions or opinions without a factual basis. *F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, LLC*, 372 Ill. App. 3d 89, 92 (2007) (citing *Steiner Electric Co. v. NuLine Technologies, Inc.*, 364 Ill. App. 3d 876, 881 (2006)).

8

¶ 20       The affidavits of Para on which Para Dynamic relies to support its motion for summary judgment include facts upon which he admittedly had no personal knowledge, particularly regarding Lamb's role in the contract between Purple Shovel and Studios. Para's affidavits reveal that he was not involved in the negotiations between Purple Shovel and Studios and did not know whether Lamb was involved. Rather, he based his statements on inferences and Gabler's deposition testimony, attesting that he had no contact with Lamb, Gabler or anyone else at Studios but deferred to Gabler. We thus decline to consider the statements he surmised or inferred based on information he did not personally know, including that Lamb negotiated with Purple Shovel. Because these statements are not based on Para's personal knowledge, we will not consider them in our analysis. See *National Union Fire Insurance Co. of Pittsburgh, PA v. DiMucci*, 2015 IL App (1st) 122725, ¶ 68 (" 'Unsupported assertions, opinions, and self-serving or conclusory statements do not comply with the rule governing summary judgment affidavits.' " (quoting *Gassner v. Raynor Manufacturing Co.*, 409 Ill. App. 3d 995, 1005 (2011))). The remainder of Para's attestations are based on personal knowledge but do not concern facts material to whether the corporate veil should be pierced. See *People ex rel. Vuagniaux v. City of Edwardsville*, 284 Ill. App. 3d 407, 412 (1996) (where improper material is included in an affidavit filed with a summary judgment motion, the court excises only the tainted portion, not the entirety of the affidavit).

¶ 21       We next turn to the issue of whether the trial court erred when it denied Para Dynamic's motion for summary judgment, granted summary judgment in favor of the Estate, and rejected Para Dynamic's request to pierce the corporate veil of Studios and satisfy its judgment from the Estate's assets. Although generally cross-motions for summary judgment take the factual disputes out of contention and we determine the propriety of the trial court's grant and denial of the motions as a matter of law, we are not bound by the conclusion of the parties or the court that there is no

genuine issue of material fact. Our role as a reviewing court is to decide whether the trial court properly found there was no general issue of material fact. Where, as discussed below, the material facts are in dispute, summary judgment is precluded even in light of the cross-motions filed by the parties.

¶ 22    A corporation has an existence that is separate and distinct from its shareholders, directors and officers. *Benzakry v. Patel*, 2017 IL App (3d) 160162, ¶ 64. The shareholders, directors and officers are generally exempt from liability for the obligations of the corporation. *Id.* However, under the doctrine of piercing the corporate veil, a corporation's liability may be extended to the shareholders, directors and officers. *Id.* It may also extend to persons who are not shareholders, directors or officers. *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 502-03 (2005) (status as nonshareholder president of corporation does not preclude liability based on pierced corporate veil).

¶ 23    The doctrine of piercing the corporate veil is an equitable remedy. *Benzakry*, 2017 IL App (3d) 160162, ¶ 30. To pierce the corporate veil, it must be established that the corporation to be pierced is "so organized and controlled by another entity that maintaining the fiction of separate identities would sanction a fraud or promote injustice." *Buckley v. Abuzir*, 2014 IL App (1st) 130469, ¶ 12. The corporate veil should be pierced "where: (1) there is such a unity of interest and ownership that the separate personalities of the corporations and the parties who compose it no longer exist, and (2) circumstances are such that adherence to the fiction of a separate corporation would promote injustice or inequitable circumstances." *Tower Investors, LLC v. 111 E. Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1033-34 (2007).

¶ 24    To determine the first prong, courts look at the following factors: (1) inadequate capitalization; failure to (2) issue stock, (3) observe corporate formalities, and (4) pay dividends;

10

(5) the debtor corporation's insolvency; (6) other officers and directors in nonfunctioning roles; (7) lack of corporate records; (8) commingling of funds; (9) corporate assets diverted by or to a shareholder or another to creditors' detriment; (10) failure to maintain arm's-length relationships among entities that are related; and (11) whether the corporation is merely a façade for the dominant shareholders' operation. *Buckley*, 2014 IL App (1st) 130469, ¶ 15 (citing *Gass v. Anna Hospital Corp.*, 392 Ill. App. 3d 179, 186 (2009)). To determine the second prong, the court determines "whether the circumstances are such that adherence to the fiction of a separate corporation would promote injustice or inequitable circumstances." *Id.* ¶ 34.

¶ 25    The first factor to determine unity of interest and ownership is inadequate capitalization. In her deposition, Gabler said that Studios never had any assets or earned any revenue and was insolvent at all times. In contrast, the amended operating agreement provided that both Gabler and Sabin would contribute $500,000 in exchange for 500 shares each and that Matt Lamb, Ltd. would contribute a number of pieces of artwork and the rights to the artwork. The list of contributed paintings was attached to the amended operating agreement, which was attached to the Estate's statement of material facts. Gabler said no transfer of the artwork took place, and if any artwork was transferred, it had no value. Gabler was not aware of the various trademarks Studios held on pieces of Lamb's artwork. Studios was organized in 2007 and the operating agreement was amended in 2009, suggesting that the corporation was an ongoing entity. The amended operating agreement also provided that Gabler be paid an annual salary of $160,000, further suggesting Studios had capital. The adequacy of capitalization is a genuine issue of material fact that is in dispute.

¶ 26    The second factor is the failure to issue stock. Per the amended operating agreement, stock was issued. The operating agreement provided that Class A members, Gabler and Sabin, each held

11

500 units in exchange for their capital contribution to Studios. Gabler, however, testified that Studios was never capitalized and it was always a shell company. This is another fact in dispute. The third factor, observation of corporate formalities, is no longer a matter of consideration. *Westmeyer v. Flynn*, 382 Ill. App. 3d 952, 960 (2008) ("failure to observe the corporate formalities is not a ground for imposing personal liability on members of an LLC"). Nevertheless, Studios was governed by an amended operating agreement, registered with the Secretary of State, and per the amended operating agreement had members and managers, and was supposed to be capitalized with $500,000 each from Gabler and Sabin and with a large number of pieces of Lamb's artwork. Aside from the amended operating agreement, which, according to Gabler was not operative, no other corporate documents were included in the record. There was no evidence of financial records, bank accounts or corporate meetings. Gabler apparently brought a few tax returns and tax documents but stated there were no other corporate documents. We find this question of observing corporate formalities also to be a genuine issue of material fact.

¶ 27        There is no information regarding whether Studios paid dividends, the fourth factor. Gabler offered no knowledge of the workings of Studios at her deposition. The fifth factor is the insolvency of the debtor corporation. While Gabler has filed personal bankruptcy, Studios has not. There is no indication of Studios' finances and record is devoid of any information whether it was insolvent. The discrepancy between Gabler's claim that Studios was never capitalized and the amended operating agreement, as well as Gabler's assertion that she owned, operated, and managed Studios raises a dispute regarding a genuine issue of material fact.

¶ 28        The next factor is nonfunctioning officers and directors. Gabler operated Studios, either alone or with Lamb or Sabin, depending on what facts are considered. Per the amended operating agreement, Gabler and Sabin were to operate Studios and Lamb was not involved. Sabin

apparently departed soon after the company was established. Gabler was the signatory for Studios and the point person on the correspondence with Purple Shovel. Thus, a genuine issue of material fact exists concerning who were the officers and directors of Studios and whether they were functioning in their roles or not.

¶ 29    The seventh factor, lack of corporate records, also raises factual issues. Although there are no corporate documents in the appeal record, Gabler brought tax returns to her deposition, establishing that some records are in existence. She attested she did not attempt to locate any documents requested by Para Dynamic because she claimed there were "no documents pertaining to any of these." It is unclear from Gabler's testimony whether corporate documents exist and she merely determined they were not relevant or whether there are not any corporate documents. Facts pertinent to factors eight and nine, whether funds were commingled between Studios and Lamb or whether assets were diverted, are also in dispute. According to Para Dynamic, Studios existed for the sole benefit of Lamb, and ultimately, the Estate, arguing that Lamb and the Estate solely benefited from Para Dynamic's services. In addition, the amended operating agreement called for an infusion of capital into Studios with the contribution of numerous pieces of Lamb's artwork. The record is unclear where this artwork is located, who owns it, and how much it is worth.

¶ 30    Similarly, while there was a family relationship between Gabler and Lamb, the evidence is unclear whether the relationship caused them to fail to maintain an arm's length relationship. Gabler says Lamb always ran Studios, there is no other evidence to support her claim. Per the operating agreement, Lamb had no role in Studios. The contract between Studios and Purple Shovel was not executed until after his death. The record includes various correspondence between Purple Shovel and Gabler suggesting that Gabler directed and managed the contract with Purple Shovel. This factor, too, is in dispute.

13

¶ 31        Finally, there is a question of fact whether Studios was a façade for an operation of Gabler, Sabin or Matt Lamb, Ltd. Gabler testified that it was a shell company at all times, while the stated purpose of Studios was to handle the logistics of exhibiting and storing artwork. As discussed above, the amended operating agreement suggested Studios was a viable entity. It was incorporated in 2007 and executed a contract with Purple Shovel in 2012.

¶ 32        An analysis of the applicable first prong factors demonstrates there is a genuine issue of material fact in dispute. In dispute is whether Studios was capitalized, issued stock and paid dividends, whether it was insolvent, whether the officers and directors were nonfunctioning, whether corporate records were maintained, funds were comingled, or assets diverted, whether there was a failure to maintain an arms-length relationship between Studios and Lamb, and whether Studios was merely a façade of Lamb. The genuine issue of material fact precludes us from reaching the second prong of the piercing analysis to determine whether adhering to the fiction that Studios was a separate corporation from the Estate would promote an injustice. That a genuine issue of material fact is in dispute also precludes a grant of summary judgment to either party.

¶ 33        The parties' statements of material facts themselves demonstrate that material facts are in dispute. These facts included whether Lamb was involved with or operated Studios and whether Studios was an operating entity. Para Dynamic's facts include that Lamb contracted with Purple Shovel to transport paintings from Spain to Ireland, while the documents supporting the Estate's statement of facts indicate the contract was transport the artwork from Spain to London and store some pieces and send others to Dubai, and the attached contract was executed by Gabler on behalf of Studios. The trial court itself initially opined that summary judgment might not be appropriate but ultimately based its ruling on its finding that Para Dynamic did not present any evidence providing an adequate basis for a finding of fraud or to pierce the corporate veil. The order does

14

not address the factual disputes, although it does state that it considered the factors necessary to pierce the corporate veil and that Para Dynamic did not satisfy them.

¶ 34 We conclude that the instant facts and the right of either party to summary judgment is not free and clear from doubt. Whether the trial court could pierce Studios's corporate veil and reach the Estate's assets involves a determination of material fact. As such, a grant of summary judgment to either party is precluded. At this stage in the proceedings, it is unclear whether Studios was an operating entity or a shell company, whether Lamb was an equitable owner, and whether Studios was an alter ego of Lamb, and after his death, the Estate. See *Pielet*, 2012 IL 112064, ¶ 54 ("standard for summary judgment is a formidable one"). The genuine issue of material fact that exists should have precluded the trial court from granting summary judgment to either party, despite that cross-motions were filed.

¶ 35 Lastly, although both parties presented argument regarding the applicability of the Dead-Man's Act (735 ILCS 5/8-201 (West 2020)) on the admission of Gabler's deposition testimony, the argument is not properly before this court as the Estate failed to raise it in its response to Para Dynamic's summary judgment motion. See *Kinzer v. Fidelity and Deposit Company of Maryland*, 273 Ill. App. 3d 211, 217 (1995), *modified upon denial of reh'g* (June 30, 1995) (issue not presented in opposition to summary judgment motion waived on appeal). In addition, the record does not indicate that the trial court determined the issue, leaving us nothing to review. See *People v. Rowland*, 36 Ill. 2d 311, 313 (1967) (court of review does not rule on issue trial court did not decide).

¶ 36 III. CONCLUSION

¶ 37 For the foregoing reasons, the judgment of the circuit court of Will County is reversed and remanded.

¶ 38     Reversed and remanded.