**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250574-U

Order filed May 19, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| PRIME HEALTHCARE ILLINOIS MEDICAL GROUP, LLC and ST. MARY'S HOSPITAL – KANKAKEE, LLC | ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiffs/Counter-Defendants-Appellees, | ) ) ) | Appeal No. 3-25-0574 |
| v. | ) ) ) | Circuit No. 25-CH-187 Honorable |
| GUARAV KAPOOR, M.D., et al. | ) ) | Bennett J. Braun, Judge, Presiding. |
| Defendant/Counter-Plaintiff-Appellant. | ) | |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Bertani and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The circuit court erred by issuing a preliminary injunction based on a non-competition agreement where the employer failed to establish the employee breached the employment agreement.

¶ 2     The plaintiff, Prime Healthcare Illinois Medical Group, LLC (Prime), sued the defendant, Dr. Guarav Kapoor, and sought a preliminary injunction, claiming he breached his employment agreement when his new employer announced his hiring before his current employment contract

had concluded. Following a hearing, the circuit court issued a preliminary injunction, and Dr. Kapoor appealed.

¶ 3                                  I. BACKGROUND

¶ 4        On June 6, 2014, Dr. Kapoor, an interventional cardiologist, signed an employment agreement to work at St. Mary's Hospital – Kankakee, LLC (St. Mary's). Dr. Kapoor served as the medical director for cardiac services at St. Mary's, and he eventually set up satellite clinics in Beecher and Watseka. St. Mary's was later acquired by Prime Healthcare Illinois Medical Group, LLC (Prime), which assumed Dr. Kapoor's employment contract.

¶ 5        The employment contract described three ways Dr. Kapoor's employment could be terminated: (1) termination without cause upon 90 days' notice by either party, (2) termination for breach of the employment agreement following written notice of the breach and a 30-day opportunity to cure, and (3) immediate termination for 11 specified causes, including the loss of Dr. Kapoor's medical license and various other impediments to his practicing medicine.

¶ 6        The employment agreement also contained restrictive covenants preventing solicitation and competition "[f]or one (1) year following the termination or expiration of [the employment contract]." During that period, Dr. Kapoor would be prohibited from practicing medicine "within 20 miles of the Service Location(s)" and prohibited from soliciting employees or patients from St. Mary's. Prime agreed to waive enforcement of the restrictive covenants if Dr. Kapoor was terminated without cause or if Dr. Kapoor terminated the agreement for Prime's breach. In the event of a breach, the employment contract also provided for injunctive relief.

¶ 7        A later addendum clarified that the restrictive covenants would become "null and void" if (1) Prime terminated the employment agreement without cause or (2) Dr. Kapoor entered private practice with medical staff privileges solely at St. Mary's.

2

¶ 8    Dr. Kapoor became unhappy with his employment at St. Mary's in June of 2025. Prime sought to negotiate a lower salary for Dr. Kapoor, and Dr. Kapoor did not wish to accept a reduction in pay. On June 23, 2025, Dr. Kapoor provided a written notice of resignation. Dr. Kapoor intended to work for Riverside Hospital at their clinic in Coal City, which is approximately 29 miles from St. Mary's.

¶ 9    While Dr. Kapoor was still employed at St. Mary's, Prime discovered several advertisements placed by Riverside announcing Dr. Kapoor's employment at Riverside's Coal City facility. Specifically, Riverside announced on social media that Dr. Kapoor had joined the cardiovascular team and provided a phone number for more information. It also placed a similar announcement on its website and later took out an advertisement in the local Kankakee newspaper, each with the same information. None of the announcements specified that Dr. Kapoor was still employed at St. Mary's.

¶ 10    That same day, Prime notified Dr. Kapoor it was terminating his employment with cause, effective immediately. It then brought suit against Dr. Kapoor and moved for injunctive relief, alleging breach of contract, breach of fiduciary duty, tortious interference, and civil conspiracy. The court held an evidentiary hearing. At the hearing, Dr. Kapoor denied authorizing or having any involvement with Riverside's marketing decisions. When asked how Riverside obtained his photograph, Dr. Kapoor testified that he had provided the photograph after Riverside's marketing department told him they needed his picture. He stated he found the photograph by searching for his own name online. He also stated he was aware of the terms of his employment agreement and scrupulously avoided discussing his future employment with the patients he continued to treat at St. Mary's.

3

¶ 11    On October 2, 2025, the court issued a ruling that included detailed findings. The court found that Dr. Kapoor "gave and apparently continues to give *** Riverside actual and apparent authority" to announce his employment at Riverside. It found Dr. Kapoor's statement that he was unaware what Riverside would do with his photograph to be "naïve and disingenuous." Consequently, it found that his actions "constituted a material breach of his duty of loyalty" to Prime, and that Prime "properly terminated [Dr. Kapoor] for cause" for breach of the duty of loyalty based on the following actions: (1) Dr. Kapoor's participation in the social media campaign, and (2) Dr. Kapoor's failure to attempt to cure the breach. Somewhat confusingly, the court also found that the breach was incurable.

¶ 12    The court issued a preliminary injunction preventing Dr. Kapoor from practicing medicine within a 20-mile radius of the St. Mary's hospitals located in Kankakee and Beecher for one year. The order permitted Dr. Kapoor to work at Riverside in their Coal City facility, but it prohibited him from "soliciting *** any patient who has received medical services at St. Mary's *** by the interventional cardiology department."

¶ 13    Dr. Kapoor appealed the court's preliminary injunction.

¶ 14    II. ANALYSIS

¶ 15    On appeal, Dr. Kapoor argues (1) Prime failed to establish the elements necessary to grant a preliminary injunction, (2) the non-compete clause contained in his contract is facially unenforceable, and (3) the court's order expands the restrictions contained in the contract. A preliminary injunction is properly granted when the movant establishes (1) a clearly ascertainable right in need of protection, (2) irreparable harm if the injunction is not granted, (3) no adequate remedy at law, and (4) a likelihood of success on the merits. We review an order granting or denying a preliminary injunction for an abuse of the court's discretion. *Smith,*

*Waters, Kuehn, Burnett & Hughes, Ltd. V. Burnett*, 192 Ill. App. 3d 693, 699 (1989). A court's factual findings will be overturned only if they are against the manifest weight of the evidence. *JL Properties Group B, LLC v. Pritzker*, 2021 IL App (3d) 200305, ¶ 58. A finding is against the manifest weight of the evidence when the opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995).

¶ 16        Employees owe a fiduciary duty of loyalty to their employers. *Mullaney, Wells & Co. v. Savage*, 78 Ill. 2d 534, 546-47 (1980). "Accordingly, a fiduciary cannot act inconsistently with his agency or trust and cannot solicit his employer's customers for himself." *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 69. Whether a particular action constitutes solicitation depends on the "the method employed and the intent of the solicitor to target a specific client in need of his services." *Quality Transportation Services, Inc. v. Mark Thompson Trucking, Inc.*, 2021 IL App (3d) 190489, ¶ 21.

¶ 17        The court's findings were based solely on Prime's theory that Dr. Kapoor breached the duty of loyalty owed to his employer, and we address only that theory. We note in passing that Dr. Kapoor could not have breached the employment agreement by violating the restrictive covenants described therein, since those covenants only came into operation following the termination of Dr. Kapoor's employment, and Dr. Kapoor was still employed at the time of the alleged violation.

¶ 18        Nonetheless, we find the court erred in finding that Dr. Kapoor breached the duty of loyalty by engaging in solicitation. After reviewing the record, we can find no evidence suggesting Dr. Kapoor solicited any patients. Solicitation " 'implies personal petition and importunity addressed to a particular individual to do some particular thing.' " *Burnett*, 192 Ill.

5

App. 3d at 703, quoting Black's Law Dictionary 1249 (5th ed. 1979). Prime provided no evidence that Dr. Kapoor personally petitioned any patients. Nor did it present evidence that Dr. Kapoor directed Riverside to do so on his behalf.

¶ 19    The court's determination that Dr. Kapoor engaged in solicitation was based on its finding that Dr. Kapoor "gave *** Riverside actual and apparent authority" to create a social media campaign. The evidence presented at the hearing does not support such a finding. Dr. Kapoor admitted to sending Riverside a photograph of himself, but he did not admit to having any knowledge that Riverside would use that photograph to create an announcement. Nor did he admit to knowing it would publish any announcement prior to the termination of his employment agreement. To the contrary, Dr. Kapoor testified he was aware of his employment agreement and his obligations to Prime. He was careful not to talk to patients about his future employment at Riverside. Prime presented no other evidence that Dr. Kapoor directed or even authorized Riverside to use his photograph to announce his pending departure. The court's findings to the contrary were therefore against the manifest weight of the evidence. See *Bazydlo*, 164 Ill. 2d 207 at 215.

¶ 20    The court also erred in finding there was a breach of the employment agreement, and that Prime terminated Dr. Kapoor "for cause." When a contract is clear and unambiguous, its language is the best indicator of the parties' intent. *Quality Transportation Services, Inc. v. Mark Thompason Trucking, Inc.*, 2017 IL App (3d) 160761, ¶ 25. By the contract's terms, the restrictive covenants in question only took effect after the contract's termination. Thus, Dr. Kapoor was not contractually prohibited from engaging in solicitation or competition during his employment. The fiduciary duty he owed to Prime prevented him from soliciting patients while still employed by Prime, but solicitation was not barred by the employment agreement. To

6

terminate Dr. Kapoor "for cause" under the contract, Prime was required to either (1) invoke one of the eleven enumerated grounds for immediate termination or (2) provide 30 days' written notice of Dr. Kapoor's breach and provide an opportunity for him to cure the breach prior to terminating his employment. Prime admits it did neither. Instead, it terminated Dr. Kapoor's employment as soon as it discovered Riverside's postings, offering no notice and no opportunity to cure. Absent cause, the agreement's plain terms rendered the restrictive covenants contained therein null and void, and ordering injunctive relief premised on those covenants was improper.

¶ 21        We make this finding despite Prime's insistence that offering Dr. Kapoor an opportunity to cure would have been futile. Parties are not required to engage in futile acts or make futile demands. *RDC Case Creek Trails, LLC v. Metropolitan Airport Authority of Rock Island County*, 2020 IL App (3d) 190083, ¶ 15. Futility may arise when, for example, the opposing party terminates the contract, or when the contract ceases to exist. *Id*. In this case, Prime terminated the contract, and it was incumbent on Prime to establish that providing notice prior to termination would have been futile. See *First Illini Bank v. Wittek Industries, Inc.*, 261 Ill. App. 3d 969, 970-71 (1994) (where a party seeks to excuse a required demand, the evidence must show the demand would have been unavailing). Yet Prime provided no evidence that Dr. Kapoor intended to terminate the contract or would have refused to attempt to cure any breach. Indeed, the available evidence suggests the opposite. Dr. Kapoor testified that he was making every effort to comply with the terms of his employment agreement prior to its termination. We must therefore conclude that Prime failed to establish that providing notice of Dr. Kapoor's alleged breach would have been futile.

¶ 22        In sum, the court's finding that Dr. Kapoor engaged in solicitation was not supported by the evidence and was therefore against the manifest weight of the evidence. The court's

7

determination that Dr. Kapoor breached the contract was also against the manifest weight of the evidence. Prime failed to establish that Dr. Kapoor breached his duty of loyalty or failed to comply with the terms of his employment agreement. Prime was therefore unlikely to succeed on the merits of its claims, and the court erred in issuing a preliminary injunction. Because we find that Prime failed to establish the elements necessary to obtain a preliminary injunction, we decline to address the scope of the restrictive covenants or the specific terms of the court's order. We remand the cause for further proceedings consistent with this order.

¶ 23                                          III. CONCLUSION

¶ 24        For the foregoing reasons, we reverse the judgment of the circuit court of Will County and remand for further proceedings.

¶ 25        Reversed and remanded.